The issue in this case involves the construction or interpretation of certain language of a resolution adopted by the Legislature of Louisiana at its Extra-Session of 1945.
At the regular session of the Legislature for the year 1944 there was a resolution adopted, by the terms of which, the provisions of Act 17 of 1935 of the first Extra-Session of that year, generally known as the Local Option Law, were suspended "until one year after peace is declared by the United States of America, Germany, Japan and their allies." The effect of that resolution was that no local option election governing the sale of intoxicating liquor could be called and held in any local municipality until one year after the time declared by the language just quoted from the resolution.
At the Extra-Session of 1945 the Legislature adopted another resolution in which it was specifically recited that in using the phrase "peace is declared" in the former resolution of 1944, it was intended to mean "when hostilities between the United States of America, Germany, Japan and their allies shall cease, as proclaimed by the President of the United States of America."
At its regular monthly meeting held on September 19, 1946, the Police Jury of St. Tammany Parish, after all other formalities had been complied with, adopted an ordinance calling for a local option election, under the provisions of Act 17 of 1935, 1st Ex.Sess., to be held in the Sixth Ward of the Parish on October 29, 1946. Upon the call having been issued the plaintiffs in this suit applied to the district court for a writ of injunction seeking to restrain the holding of the said election and to have the ordinance calling the same nullified. The grounds on which the proceedings are based is that the time for suspension of the law authorizing such elections under the resolution of the Legislature for the year 1945, had not yet expired.
An exception of no cause or right of action having been overruled, the defendant filed its answer putting the matter at issue. The case was then submitted on an agreed statement of fact upon which the trial judge ruled against the plaintiffs rejecting their demand for the injunction prayed for and dismissed their suit. They have taken this appeal.
As already stated, we have before us the simple matter of interpreting what is meant by the language used in the resolution passed by the Legislature in 1945 suspending the provisions of Act 17 of 1935, 1st Ex.Sess., until one year after the time or day "when hostilities between the United States of America, Germany, Japan and their allies shall cease, as proclaimed by the President of the United States of *Page 513 
America." The right or power of the Legislature to suspend the provisions of the law of 1935 is not questioned.
It is not disputed that in September and October of 1946, no proclamation of the President of the United States of any kind relating to peace or to the cessation of hostilities had yet been issued. On September 6, 1945, the President did send a message to the Congress of the United States the tenor of which would indicate that, to the contrary, he was not yet ready to issue any such proclamation, for he says in that message, "the time has not yet arrived however, for the proclamation of the 'cessation of hostilities' much less the termination of the war." Taking these words in their literal meaning, and there is no reason why we should not, for he is the commander in chief of the armed forces of the country, on that very day we were still at war and obviously peace had not yet been declared. Even under the first resolution adopted by the Legislature in 1944, therefore, it would seem that on the date of that message, the period of suspension until one year after peace isdeclared, had not yet started to run.
Any doubt which may have existed, however, as to what the Legislature meant in using the phrase "when peace shall be declared" in the resolution of 1944 was entirely removed when it undertook the task itself, in the following session of 1945, to define that what it meant and intended to mean when it used that expression was "when hostilities shall cease, asproclaimed by the President of the United States of America." (Italics ours.) It was not until December 31, 1946, that the President of the United States issued a proclamation, No. 2714, 50 U.S.C.A.Appendix, § 601 note, declaring that "hostilities had ceased" and, we conclude that what was left of the period of suspension was one year which started to run from that date and which will expire on December 31, 1947.
[1] The contention made by counsel for the defendant is to the effect that in seeking to ascertain the intention of the Legislature in adopting a resolution of this kind, the reason and the spirit which prompted its action must be consulted and given effect rather than the letter or wording of the resolution itself. But that rule of construction applies only when the letter or the expression of a law or resolution is dubious. In fact art. 18 of the Civil Code provides for such a rule of construction in the following language: "The universal and most effectual way of discovering the true meaning of a law, when its expressions are dubious, is by considering the reason and spirit of it, or the cause which induced the Legislature to enact it." The very first rule of construction, as laid down in the Code, is found in art. 13, which reads as follows: "When a law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit."
In the present case, were we to assume that there 'was ambiguity, or a doubtful meaning in the phrase "peace is declared" in the first resolution that was adopted in 1944, the Legislature could no more positively have indicated what it meant than by pursuing the method it did in 1945 in declaring in a subsequent resolution what it intended and that was that the suspension period provided for in the original resolution would extend for a year from the time when hostilities had ceased, as per a proclamation by the President. It seems as though the Legislature anticipated that there might be some question, in construing the original resolution, as to when the period of one year as fixed therein would begin to run and in order to dispel any misapprehension in that regard, it decided to fix that date from one that might appear uncertain to one that would be certain. If people differed as to what was meant by the phrase "when peace is declared", there could be no difference among them as to what was meant by "a proclamationof the President."
[2] There is no reason, in this case, why resort should be had to anything beyond the very letter and wording of the resolution in order to accord it its real meaning. Conceding that the reason which prompted the Legislature to adopt it was that the men and women in the armed forces of the country would not be deprived of their right to vote in local elections *Page 514 
and now that a great majority of them are back at home the purpose of the resolution has been accomplished; and conceding also that actual hostilities had ceased when the defendant Police Jury acted in September, 1946, yet, in view of the plain wording of the resolution that it required a proclamation by the President to fix definitely the day of the cessation of hostilities and, accordingly, the period of suspension of the Local Election Law of this State, the court has no right to go beyond that wording in trying to fix any other date or period. It is true also, as stated, that a large majority of the men and women who were in the service are back home and can participate in such elections, but it is equally true that large numbers of them are still in the occupied war areas of Europe and Japan, and many also in the training camps in this country, away from home, and there is no reason why the favor accorded originally by the resolution to those who were in the service at the time it was adopted, should not be accorded as well to those who are still in, until such time, at least, as the period of suspension of the law shall have expired.
We have found the case of Dubuisson et als. v. Simmons et als., Fla., 26 So.2d 438, 439, of some assistance in passing on the question presented for determination in this suit. It is a Florida case but can well be used as authority in the matter of construing the language used in a statute suspending certain provisions of another law during the war. In that case, a law relating to the retirement of certain officers of the civil service provided that no one under that law should be required to retire, "so long as the present state of war with the Axis Powers or any of them, shall actively continue." Rather significantly, it is stated in the opinion that "power is not given to the courts under our system of government to determine that a state of war exists or to determine that a state of war once declared by the proper authority no longer actively continues except when such determination is based upon the affirmative Act of Congress or the Proclamation of thePresident or by the adopting of a treaty of peace approved by the Senate." (Italics ours.)
In Hamilton v. Kentucky Distillers and Warehouse Company,251 U.S. 146, 40 S.Ct. 106, 107, 64 L.Ed. 194, the Supreme Court of the United States had to apply the meaning of the phrase "conclusion of the war" as used in the War-Time Prohibition statute which read in part as follows: "That after June thirtieth, nineteen hundred and nineteen, until the conclusion of the present war and thereafter until the termination of demobilization, the date of which shall be determined and proclaimed by the President of the United States, for the purpose of conserving the man power of the Nation, * * *, it shall be unlawful to sell for beverage purposes any distilled spirits, * * *." After disposing of several other contentions, the Court stated: "Furthermore, to construe 'conclusion of the war' as meaning the actual termination of war activities, would leave wholly uncertain the date when the act would cease to be operative; whereas Congress evinced here, as in other war statutes, a clear purpose that the date of expiration should be definitely fixed. The reason why this was not directed to be done by a proclamation of peace is made clear by the use of the word 'thereafter.' It was expected that the 'conclusion of the war' would precede the termination of demobilization. Congress, therefore, provided that the time when the act ceased to be operative should be fixed by the President's ascertaining and proclaiming the date when demobilization had terminated. It is insisted that he has done so. The contention does violence to both the language and the evident purpose of the provision. The 'date of which shall be determined and proclaimed by the President' is a phrase so definite as to leave no room for construction." The same can be said, we believe, of the phrase "as proclaimed by the President of the United States" as used in the resolution under consideration in this case.
We think that the language quoted from both the cited decisions is peculiarly pertinent to the issue presented here and because of it and also for the other reasons stated herein, we have concluded that the judgment appealed from is erroneous and that it should be reversed. *Page 515 
[3] It is therefore ordered that the judgment appealed from be, and the same is hereby reversed, annulled and set aside and it is further ordered, adjudged and decreed that there be judgment in favor of the plaintiffs, Mattie Reeves and Jules Wilson, and against the defendant, Police Jury of St. Tammany Parish, declaring the resolution of the said Police Jury adopted on September 19, 1946, calling, ordering and fixing an election for Ward Six of St. Tammany Parish to vote on whether or not alcholic beverages shall or shall not be sold therein, and any and all other resolutions pertaining to the said election, to be illegal, null and void, and,
It is further ordered, adjudged and decreed that the said Police Jury of St. Tammany Parish be, and it is hereby enjoined, restrained and prohibited from taking any steps or proceeding any further under the terms and provisions of the said resolution.
It is further ordered that the defendant pay all costs of this proceeding.