# Nelson, Adm'r, v. Manning.

## Action on Promissory Note.

1. *Contract; how construed.*—In the absence of plain and unequivocal language, which forces such an interpretation, coûrts will never give a contract such a construction as will convert it into a mere speculative contract, equivalent to a wager, dependent for performance on a contingency which may never happen.

2. *Same.*—A promissory note, executed in this State, on the 4th day of December, 1862, read as follows : " On or before the first day of January, 1864, provided peace is by that time declared between the old United States and the Confederate States, I promise to pay R. J. Manning, or order, three hundred and thirty dollars, for value received, with interest from the 27th day of November, 1862; but in no event is this made due and payable until peace is concluded and declared, as above written. Jno. G. Lovett." Suit was commenced on it on the 15th day of February, 1866. HELD :

1. That the cessation of hostilities, and the restoration of peace, and not the formal making of peace by treaty between the belligerent powers, was the event upon which the note became payable.

2. That as between citizens of Alabama, in their relations with each other, peace must be held to have been declared not later than the 20th day of December, 1865, if not before that time, that being the date when Provisional Governor Parsons surrendered his authority to the Governor elected under the constitution of 1865 ; although, in other cases, peace may not be regarded as re-established until after the proclamation of the president declaring its restoration,—and consequently the suit was not commenced prematurely.

APPEAL from Circuit Court of Dallas.
Tried before Hon. MILTON J. SAFFOLD.
The opinion states the facts.

[Nelson *v.* Manning.]

JOHNSTON & NELSON, for appellant. If the note sued on ever became due, it was when the war terminated between the Confederate and United States governments. By express stipulation, it was not payable until peace was *concluded* and *declared.* In a legal sense, the state of war or of peace is not a question for the courts to determine. It is a legal fact, ascertainable only from the decisions of the political department. *U. S.* v. *Palmer,* 3 Wheaton, 610; *Luther* v. *Borden,* 7 How. 1; 4 Wheat. 52-497. The proclamation of the president, declaring the war at an end in Alabama, was issued April 2d, 1866. On the 20th of August, 1866, the president issued his final proclamation, declaring peace had been restored. This last date is recognized by Congress as the end of the war, and the courts have followed these departments. *U. S.* v. *Anderson,* 9 Wallace, 20; *Perkins* v. *Rogers,* 35 Ind. 124; *Phillips* v. *Hatch,* 1 Dill. 571. The suit was commenced before the note was due.

Neither the record nor docket gives the name of counsel for appellee.

BRICKELL, C. J.—This suit was commenced by the appellee, on an instrument in writing, signed by the intestate of the appellant, for the payment of money to the appellee, in these words:

"$330 00. On or before the first day of January, eighteen hundred and sixty-four, 1864, provided peace is by that time declared between the old United States and the Confederate States, I promise to R. J. Manning, or order, three hundred and thirty dollars, for value received, with interest from the 27th day of November, 1862; but in no event is this note due or payable until peace is concluded and declared as above written. Central Mills, this, the 4th day of December, 1862.

(Signed) "JNO. G. LOVETT."

Several pleas were interposed by appellant, two of which only are material, as the case is here presented; the general issue, and that suit was brought before the money was payable. Referring to the summons, it appears to have been issued on the 15th February, 1866. No evidence was given on the trial, except the instrument in writing. The court charged the jury, the plaintiff was entitled to recover; and the defendant reserved an exception, on which this appeal is taken.

The argument of the appellant's counsel assails the correctness of the charge, on two grounds, viz: first, that the

[Nelson v. Manning.]

proper construction of the instrument is, that the contingency or event on which the money is payable, is a peace made between the United States and the Confederate States, as independent powers—a peace, which should terminate the war flagrant when the instrument was executed, and preserve the independence and sovereignty of each ; that the instrument should be read, as the contingency was expressed in Confederate treasury notes, the circulating medium of the country at that time, "after the ratification of a treaty of peace between the United States and the Confederate States." Thus construing the instrument, the money is not, and can never become payable, and the charge would be erroneous. When the condition of the country at the execution of the instrument is remembered, and the general, if not the universal conviction, that on such a termination of the war depended our wealth, industry, and material prosperity, and, of consequence, the ability of individuals to meet their pecuniary engagements, it is not impossible that such was the event or contingency contemplated by the parties. Such a construction of the instrument converts it into a mere speculative contract, equivalent to a wager, the one party risking all on the success of the Confederate States. If such a contract would be legal, it must be expressed in clear and precise terms. It will not be derived from ambiguous, uncertain words, or words capable of clear and precise meaning, in their usual signification, adopting which gives full validity and operation to the contract, deprives it of all speculative character, and fixes the day of performance on an event which must inevitably occur.

The intention of the parties is the thing to be ascertained, in the construction of contracts; and in ascertaining it, regard must be paid to the nature and character of the contract. This instrument, under the statute (R. C. §2681), imports that it was made on a sufficient consideration, a valuable consideration, of detriment to the promisee, or of benefit to the prommissor. If its words are of doubtful meaning, they must be taken most strongly against the promissor. 1 Brick. Dig. 386, § 162. So, if it is susceptible of two constructions, that construction which will give it operation, rather than that which will deprive it of all force, must be adopted. Ib. § 163. And if it is capable of two meanings, the one ageeable to, and the other against law, the former must be followed. Ib. § 164.

Looking to the nature of the instrument, its terms, and the fact that it imports a valuable consideration, the intention of the parties must have been that it should be payable

[Nelson v. Manning.]

at some time, which must certainly arrive.  Unless we treat it as a wager, or a speculative contract, dependent for payment, and intended by the parties so to be made, on an event which, under the circumstances surrounding them when it was made, would possibly never happen, the intention must have been that it should be payable on the cessation of the hostilities then existing, and the restoration of peace, whether this event was the result of the triumph of the one or the other of the belligerents.  Such an intention is most reasonable, in the construction of a contract founded, as this imports, on a valuable consideration. Adopting it preserves validity to the contract, and gives it the operation declared by its terms, a promise to pay money on the happening of a future event.  When, therefore, after the first day of January, 1864, the war flagrant at the making of the instrument had terminated, and peace was restored, the instrument became payable.  It seems clear to us, this was the event contemplated.  If it occurred before the 1st day of January, 1864, then the money was not payable until that day.  If it occurred subsequently, then its occurrence was the day of payment.  It is not the making of peace by treaty between the belligerent powers which is the event—not the ratification of such treaty ; but the declaration of peace—the cessation of hostilities, established and pronounced as a fact, which the citizen could accept and rely upon, without regard to the manner in which it was created.  Of this construction the words are susceptible, and, as it relieves the contract from all objections to its validity, it must be adopted.

Admitting this construction, the correctness of the charge is denied, because, it is said, when the suit was commenced, peace had not been declared ; that it was not declared until President Johnson's proclamation, of April 2d, 1866, or of August 20th, 1866 ; the first declaring that armed resistance had ceased everywhere, except in the state of Texas ; and the latter that it had ceased there also, and that peace prevailed throughout the whole Union.  It may be, as is suggested in argument, that a state of peace, or of war, is not a pure question of law, lying within the province of judicial decision ; but that the courts adopt and follow the decisions of the political departments of the government.  Yet, we think, in the decision of a question like that now presented, the recent war may be regarded as having terminated, when, if a different question, involving different considerations, were presented, it could not be so regarded.  *U. S.* v. *Anderson,* 9 Wall. 68.  It is the public history of the State,

VOL. LIII.

[Nelson v. Manning.]

that on the 21st June, 1865, the president of the United States appointed Lewis E. Parsons provisional governor of the state, clothing him with power to organize in the state, and for the state, a government in harmony with the constitution and laws of the United States.   In the exercise of the power delegated to him, Gov. Parsons put in operation a government having all the agencies and instrumentalities known to the constitution and laws of the state, which were necessary to a peaceful provisional government.   A convention to amend and revise the constitution, composed of delegates elected by the people, assembled and framed a constitution, ordaining and establishing a state government, in conformity to the original constitution of the state, departing from it only so far as was necessary to meet the changed condition of the people.   The courts were open.   Statutes of limitation and non-claim became operative.   The law of the State was ample for the protection of the citizen, and the civil officers of the state had authority and power to execute it.   To this law the citizen looked for redress of his injuries, and enforcement of his rights.   A governor, a general assembly, and all state officers were elected in obedience to the constitution which had been framed and adopted.   On the 18th December, 1865, the president directed the provisional governor to surrender to the governor elect the office of governor, and his authority expired.   On the 20th December, 1865, the surrender was made, and from that day until it was superseded by the reconstruction laws, a government, the successor of the government ordained in 1819, prevailed in Alabama.   As to the citizens of Alabama, in all their relations with each other, peace must be regarded as having been established and declared from the day this government succeeded to the provisional government, if not at an earlier period; however the fact may be regarded, when these relations are not involved.   A state of war no longer existed; the Confederate States were overthrown; allegiance and obedience was yielded to the government of the United States; its constitution and laws were the supreme law of the state, which every officer was sworn to obey and defend.   That government was without an enemy; and without enemies there cannot be war.   Every department of the state government has so accepted and regarded the fact, and the records of this court bear conclusive evidence of its recognition by the judiciary.

The suit was not, therefore, premature; the day of payment had passed when it was commenced; and there is no

[Brantley *v.* So. Life Ins. Co.]

error in the charge of the court. The judgment must be affirmed.