COLONIAL HOTELS, INC., a Florida Corporation, v. EDWIN T.
    MAYNARD, BOULEVARD OPERATING CO., INC., a Florida Corporation, and S. ANSIN.

29 So. (2nd) 28                                                June Term, 1946
November 8, 1946                                              En Banc
Rehearing denied December 17, 1946

*Hoffman & Durant,* for appellant.

*McKay, Dixon & DeJarnette,* for appelles.

BUFORD, J.:

On July 19th 1940 Colonial Hotels, Inc., a corporation, and Edwin T. Maynard entered into a contract under which Maynard was to operate a restaurant on the premises owned by Maynard and leased from Colonial Hotels, Inc., a kitchen located on the premises owned by Colonial. It was provided that Maynard could assign the lease.

On August 31st 1940 a contract was entered into between Maynard and Boulevard Operating Co., Inc., whereby Boulevard Operating Co. leased the restaurant and kitchen. Both of these agreements provided for the payment of certain rents under which the lease-contracts could be cancelled.

On April 1st 1942 Colonial Maynard and Boulevard entered into a tri-party contract. It is some of the terms of this contract which the court below was called upon to construe and enforce by its declaratory decree.

The pertinent parts of the contract which we have under consideration are as follows:

"To Have and to hold the said premises and equipment for a period beginning on April 1, 1942, and ending three months after the termination of the present war, as hereinafter defined which period shall constitute and be designated as, the term hereof, subject, of course, to the expiration date set forth in that certain lease agreement dated August 31, 1940, a copy of which is attached hereto as Exhibit 'B.'

"2. For the term hereof Boulevard and Maynard do hereby forego their right and interest under, and the leasehold estate created by, that certain lease agreement dated July 19, 1940, by and between Colonial as Lessor and Maynard as Lessee, covering the premises and property therein more particularly described (a copy of which is attached hereto as Exhibit 'A'.")

"4. Within thirty (30) days after March 31, 1943, and every ensuing March 31 thereafter during the term hereof, Colonial will pay to Boulevard out of its annual net profits (as determined by Ernst & Ernst, or by some other certified public accountant acceptable to all parties hereto) from the operation of the premises covered hereby and hereinabove described as a cocktail lounge, restaurant and dining room (a)

the first Two Thousand Dollars ($2,000.), (b) fifty percent (50%) of the next Three Thousand Dollars ($3,000.), (c) thirty percent (30%) of the balance; and will furnish to Boulevard simultaneous with such payments an audit by such certified public accountant covering the business done in said cocktain lounge, restaurant and dining room during the preceding lease year ending on March 31, and will permit Boulevard to make additional audits at its own expense at any other time not more frequently than once a month, during such reasonable business hours as not to disturb the business of Colonial, either before or after acceptance of rental payments. Should the term hereof or the final period of such term be less than one year the rental shall be calculated for the fractional period upon the same basis as outlined above.

"5. For the term hereof, Colonial expressly assumes and agrees to perform all obligations (applicable hereto and not inconsistent herewith) imposed upon the Lessee in each of those two certain lease agreements, except as modified herein, . . . "

"8. Upon termination hereof, the parties hereto will resume their relations under the respective lease agreements herein referred to as Exhibits 'A' and 'B' as if this agreement had never been entered into and the terms and conditions of said lease agreements shall not be modified except as herein outlined and then only for the term hereof. However, should Colonial fail to perform each and every of the covenants and obligations undertaken or imposed hereby and such failure shall continue for a period of thirty (30) days after notice thereof, then Maynard and Boulevard may thereupon or thereafter terminate this agreement prior to the term hereof and otherwise pursue such remedies as may be available to them."

"9. For the purposes of this agreement the present war will be considered as having terminated when all hostilities cease and an armistice has been signed between the United States of America and all nations with which it may at such time be at war."

On July 19, 1945, a controversy having arisen between the parties as to the proper construction of the tri-party contracting or agreement, suit was filed by Colonial to procure a

declaratory judgment seeking the interpretation of the agreement dated April 1, 1942, and applying for temporary injunction to restrain the appellees from taking any action that would interfere with Colonial's possession until the ultimate decision in this. The injunction was granted.

There appears to be only two questions necessary for our determination here: One is raised by the appellant and is stated as follows:

"Where an agreement provides that it is to terminate 'when all hostilities cease and an armistice has been signed between the United States of America and all nations with which it may at such time be at war,' and it is admitted by all parties that an armistice has not been signed with all such nations, and the evidence shows that all hostilities have not ceased and that the true intent of the parties was that the agreement should continue for the 'duration of the war'; has the agreement terminated or can it terminate before the President of the United States or Congress declares that all hostilities have ceased or a peace treaty has been signed?"

The other question is stated by appellee, cross-appellant, as follows:

"Under the three-party agreement whereby Colonial assumed all obligations of Boulevard to Maynard, was not Maynard entitled to collect rents under such assumption clause?"

Appellants rely with considerable confidence on our opinion and judgment in the case of Dubuisson et al. v. Simmons, 157 Fla. 473, 26 So. (2nd) 438. The language which we had under construction in that case was: "so long as the present state of war with the Axis Powers or any of them, shall actively continue."—whereas, the language used in the contract here under consideration was: "when all hostilities cease and an armistice has been signed between the United States of America and all nations with which it may at such time be at war."—and this language was used to limit the meaning of the words herein above quoted from paragraph 1 of the contract as follows: "and ending three months after the termination of the present war, as hereinafter defined."

The Chancellor entered his decree finding in effect that under the terms of the contract it terminated on December 2, 1945, the same being 90 days subsequent to the cessation of hostilities and 90 days from the date of the capitulation and signing of the surrender agreement by Japan, said nation being the last of the nations with which the United States was engaged in war at the time of the execution of the three-party contract aforesaid. He also found in effect that all rents required to be paid under the terms of the contract were those specified in paragraph 4 thereof heretofore quoted and therefore, his finding and decree was against the appellants on the issues involved in question No. 1 and against the appellee cross-appellant on the issues presented in question No. 2. We think that both questions were answered correctly.

The language used in the contract fixing the time when same should expire was susceptible to more than one construction and so it was proper to resort to parol testimony to determine what meaning the parties had in mind at the time the language was used.

A great preponderance of the evidence in this record warrants the conclusion that the parties did not mean for the contract to remain in force until a state of war should be formally terminated but that they intended that the term of lease should end 90 days after the cessation of resistance to or offensive prosecution of active warfare between the United States of America and either of the Axis Powers and the signing of armistice agreement between this Country and the last of the Axis Powers or an agreement paramount to an armistice agreement. It was never intended by the parties that the lease-contract should continue in force in event that total and unconditional surrender occurred and, therefore, any armistice agreement became puerile and could be of no force or effect. Hostilities, as the parties intended that term to imply in this contract, had ended with Germany long before they ended with Japan but they did end with Japan with the signing of the unconditional surrender agreement on the deck of the Battleship Missouri in Tokyo Bay on the 2nd day of September, 1945, and since that time no contests of arms have been indulged in between this Country and any other country in the world.

Appellant cites Hamilton v. Kentucky Distilling Co., 251 U. S. 146, 167. In that case it was held that in the absence of specific provisions to the contrary "the period of war has been held to extend to the ratification of the treaty of peace or the Proclamation of Peace."

In the instant case there were specific provisions to the contrary and we, therefore, think that the United States v. Hicks, 156 Fed. 707, is authority for the construction which we have placed on the language used. At the time these parties entered into this contract it had not occurred to the most optimistic thinkers that the result of the war would be the unconditional surrender and, therefore, the complete sub-jugation of all the Axis Powers engaged in that war. When that occurred and the Axis Powers had each and all signed articles of unconditional surrender it was tantamount to the signing of an armistice and the possibility of a conventional armistice agreement vanished and hostilities, in the sense contemplated by the parties to this contract, had ceased.

We have given consideration to the second question presented and this answer must be determined by a construction of the contracts of July 19, 1940, August 31, 1940 and April 1, 1942. When taken and considered in paria materia our conclusion is that the construction of these contracts was properly determined by the Master and confirmed by the decree of the Chancellor.

No error being made to appear, the decree appealed from is affirmed.

So ordered.

BROWN and THOMAS, JJ., and BARNS, Circuit Judge, concur.

CHAPMAN, C. J., TERRELL and ADAMS, JJ., dissent.

ON PETITION FOR REHEARING

BUFORD, J.:

Counsel for appellant in petition for rehearing assumed that we over-looked and failed to give effect to paragraph 8 of the tri-party agreement referred to our opinion filed herein on November 8th, 1946, and insisted that the parties should be

required to resume their relations under the agreement referred to in paragraph 8 as Exhibits "A" and "B." This position might be tenable were it not for the fact that paragraph 8 also provides that "and conditions of said lease agreements shall not be modified except as herein outlined and then only for the term thereof." The agreement referred to as Exhibit "A" contained the following:

"It is further agreed that in the event after April 30, 1942, the Lessee shall effect a bona fide sale of the property belonging to him and hereinabove described, i.e., lots two (2) and three (3) in Block one hundred two (102) North in the City of Miami, Florida, then and in that event the Lessee shall have the right and privilege to terminate this lease and the term hereby demised and all obligations of the Lessee thereunder, provided the Lessee shall give written notice to the Lessor of his intention to exercise said option, specifying the reasons therefor, within thirty (30) days after the effective date of the sale of said property. In such event such cancellation shall become effective on the 30th day of April following the effective date of such sale. Between the effective date of such sale and April 30th next following, such purchaser shall assume all obligations imposed upon Lessee under the terms of this instrument, and such purchaser shall have all rights granted Lessee under the terms of this instrument."

And also the following:

"From and after the effective date of any termination as herein provided, all liability of either of the parties for rent accruing after or for performance of any of the covenants herein contained on its or his part to be performed after said effective date, shall cease and determine."

The agreement referred to as Exhibit "B" contained the following:

"It is further agreed that in the event at any time after April 30, 1942, the Lessor shall effect a bona fide sale of the property in or on which the demised premises are located, to-wit: lots two (2) and three (3) in Block One Hundred Two (102) in the City of Miami, Florida, then and in that event the Lessor shall have the right and privilege to terminate this lease and the term hereby demised, and all obligations of

the Lessor hereunder, providing the Lessor shall give written notice to the Lessee of his intention to exercise said option, specifying the reasons therefor, within thirty (30) days after the effective date of the sale of said property. In such event such cancellation shall become effective on the 30th day of April following the effective date of said sale."

On June 25, 1945, sale of the property was effected to S. Ansin and notice thereof was given the parties as required by the agreement, supra. In such notice is stated that the lease would expire and terminate under the terms of the agreements on April 30, 1946. It is our construction of the three agreements when taken together that the provisions that termination of the lease by reason of sale remained in full effect and, therefore, when the final decree was entered on May 7, 1946, S. Ansin was entitled to the possession of the premises purchased by him for Maynard.

Therefore, the decree of the Chancellor in this regard was without error.

For the reasons stated, petition for rehearing should be and is, denied.

THOMAS, BARNS, JJ., and HARRISON, Circuit Judge, concur.

CHAPMAN, C. J., TERRELL and ADAMS, JJ., dissent.