63 So.2d 911 (1953)
EHRLICH
v.
BARBATSIS HOLDING CO.
Supreme Court of Florida, Special Division A.
March 24, 1953.
Anderson & Nadeau, Miami, for appellant.
E.F.P. Brigham and Phillip Goldman, Miami, for appellee.
BARNS, Justice.
The appellee-plaintiff-lessor brought a suit for a declaratory decree against the appellant-defendant-lessee to have determined whether or not the term of said lease had expired and, if not, when it would expire. Its claim was that the term had expired while the defendant-appellant claimed it had not.
Upon the filing of the answer the plaintiff served a motion for a summary judgment and thereupon the appellant-defendant served a motion for judgment on the pleadings and in the alternative a motion for summary judgment. Both motions for summary *912 judgment were upon the ground that there is no genuine issue as to any issue of fact. Affidavits were filed by each party, but for the purposes of the motion they served no purpose.
The Chancellor granted the motion of the plaintiff adjudicating that the term of the lease had expired, whereupon the lessee brought this appeal from the Final Decree.

Facts
On November 23, 1942, the plaintiff-appellee Barbatsis Holding Company, executed a lease of property for an undetermined term of years described in said lease in the following language:
"To have and to hold the same unto the Lessee from the 10th day of December, 1942, for and during the continuance of the war now being waged between the United States of America and its Allies against the so-called `Axis Nations' and for six months after the final treaty of peace has been signed."
The termination date of the lease is further made reference to in Paragraph 13 of said Lease in the following language:
"At the termination of this Lease by termination of the war, or otherwise, the Lessee shall immediately yield up possession to the Lessor, * * *."
Plaintiff alleges that the war being waged by the United States of America and its Allies against the so-called "Axis Nations" has been concluded and was concluded by the unconditional surrender of Japan to the United States of America and its Allies on August 14, 1945, (the unconditional surrender of the other "Axis Nations" having been obtained prior to said August 14, 1945), at which time all hostilities between the United States of America and its Allies against the so-called "Axis Nations" ceased; that by reason thereof and by reason of the terms and provisions of said lease, said lease has terminated and did terminate six months after said date of August 14, 1945.
Plaintiff further alleges that the Congress of the United States of America, by a joint resolution, approved October 19, 1951, 50 U.S.C.A.Appendix, note preceding section 1, declared said war, which began December 11, 1941, to have terminated; that on October 24, 1951, pursuant to said joint resolution of Congress, the President of the United States of America proclaimed that the state of war between the United States of America and the Government of Germany was terminated on October 19, 1951; that prior to the said Presidential Proclamation and Joint Resolution of Congress, the United States of America was a signatory to a Peace Treaty with Italy, Feb. 10, 1947, 50 U.S.C.A.Appendix, p. XXI, and a Peace Treaty with Japan, Sept. 8, 1951, 50 U.S.C.A.Appendix, p. XIX; that by reason thereof, and by reason of the terms and provisions of said lease, if said lease did not terminate six months after the unconditional surrender of Japan on August 14, 1945, said lease, at the latest, terminated six months after October 19, 1951, said date being the date of the termination of the war with Germany, pursuant to said Joint Resolution of Congress and said Presidential Proclamation.
The defendant, Joseph Ehrlich, who holds the Lessee's interest in said lease and all other defendants who hold possession to said premises claim that said lease did not terminate six months after the unconditional surrender of Japan on August 14, 1945, and that it did not terminate on April 19, 1952, which date is six months after the aforesaid termination of the war with Germany by said Joint Resolution of Congress and said Presidential Proclamation, and that term of said lease will not terminate until six months after a treaty of peace has been signed with all of the enemy nations.

Conclusion
Since the parties have submitted the controversy upon the facts as plead and admitted facts relating to the term of the lease and the facts relating to war, cessation of hostilities, treaties, Congressional Resolutions and Presidential Proclamation of which facts the Chancellor took judicial notice, our decision will likewise be governed by the law applicable to such facts.
*913 We are called on to determine what was meant by the terms of the lease as of the time it was executed and accepted, taking into consideration the circumstances as of that time. No mistake in terminology is claimed. Each party rests upon the express language. The appellee seeks to have us hold that the lease will extend for six months from the signing of "the final treaty of peace" as to all of the warring enemy nations.
The term of a lease for years must be certain and if not, an estate at will is created. 3 Thompson on Real Property 239, 32 Am.Jur. 77. It has been held that a lease for the duration of the war and for one year after the signing of an armistice was indefinite in duration and created a "tenancy at will". Michael Tuck Foundations Inc., v. Hazelcorn, 187 Misc. 954, 65 N.Y.S.2d 387, 390. However, we have not so held as of this time.
Courts should attempt to give words and phrases used in contracts the natural meaning or that meaning most commonly understood when considered in reference to subject matter and circumstances. The words "conclusion of the war" or "duration of present world war" or "conclusion of duration" do not have a definite legal meaning. Such meaning will depend on the subject matter to which the words relate and the purpose of their use. The intent of the quoted language may vary with the circumstances and such words will not essentially convey the same connotations under all circumstances. See Rupp Hotel Operating Co., v. Donn, 158 Fla. 541, 29 So.2d 441.
In Colonial Hotels, Inc., v. Maynard, 158 Fla. 318, 29 So.2d 28, we held that where lease was to end "three months after termination of war, as hereinafter defined," and defined "termination of war" to be "when all hostilities cease and an armistice has been signed between United States of America and all nations with which it may at such time be at war," conclusion was warranted that parties did not intend lease to continue in force until state of war was formally terminated, but lease terminated 90 days after signing of unconditional surrender agreement with Japan.
Nelson v. Manning, 53 Ala. 549 involves a suit on a promissory note which provided it was to be paid on or before January 1, 1864, "provided peace is by that time declared between the United States and the Confederate States. * * * But in no event is this made due and payable until peace is concluded and declared as above written." Suit was brought on this note on the 15th day of February, 1866, and it was contended that the suit was premature because the peace had not been proclaimed by the President until April 2, 1866, and with respect to Texas, August 20, 1866.
The Court held that the cessation of hostilities and not the actual proclamation of peace or the signing of a peace treaty was the due date of the note, and, since the cessation of hostilities had occurred before suit was brought, it was not premature. After noting that a literal construction would render the instrument unenforceable, payment being conditioned on an event that might never come to pass, the Court said 53 Ala. at page 552:
"When therefore, * * * the war flagrant at the making of the instrument had terminated and peace was restored, the instrument became payable. It seems clear to us this was the event contemplated. * * * It is not the making of peace by treaty between the belligerent powers which is the event  not the ratification of such treaty; but the declaration of peace  the cessation of hostilities, established and pronounced as a fact, which the citizen could accept and rely on without regard to the manner in which it was created."
When the term "treaty of peace" in reference to an existing war is used to designate the commencement of the last six months of the term of a lease it does not necessarily have the same meaning as when used in the international sense in negotiations between nations at war. Conventional terms used in negotiations *914 leading to the termination of an existing war are likely to require that such terms be given their technical meaning; while as between a landlord and a tenant, neither of which can be responsible for the consummation of a treaty of peace, an interpretation of such terms that will permit a greater elasticity may be required or permitted in order to arrive at the intent of the parties.
A Treaty of Peace was signed by the United States and Japan at San Francisco in 1951, and with Italy in 1947. As to Germany, a formal treaty of peace has not been signed because no terms have been proposed to which Russia has assented. As a consequence of the situation other steps usually dealt with by a treaty of peace have taken place.
In 1951 Congress passed a joint resolution stating "That the state of war declared to exist between the United States and the Government of Germany by the joint resolution of Congress approved December 11, 1941, is hereby terminated and such termination shall take effect on the date of enactment of this resolution: Provided * * * [trading with the enemy act * * *]." 50 U.S.C.A.Appendix, note preceding section 1. Public Law 181, 82nd Congress, Ch. 519, 1st Session, H.J.Res. 289, 65 Stat. 451. Approved by the President October 19, 1951.
The United States, the United Kingdom, and France on the one part, and Federal Republic of Germany on the other part have become signatories to a "Convention on Relations" arising out of the War and Occupation, pursuant to which the Federal Republic of Germany will have full authority over its internal and external affairs, except in certain matters; and the relations between the contracting parties will thence forth be conducted through Ambassadors and the Foreign troops in West Germany will cease to be "occupation troops". There are other provisions which need not be related for our purposes.
We now have a "Contractual Agreement" with the Federal Republic of Germany consisting of the "Convention on Relations" as a basis to which there are annexes of "related conventions", the aim of which was to give Western Germany independence so far as the circumstances permitted. It contained those stipulations usually contained in a treaty for the benefit of the conquerors, as well as others to include the Federal Republic in the community of free nations. See 26 Dept. of State Bull. 887 (June 9, 1952), and 47 American Journal of International Law (January, 1953). In absence of a Peace Treaty made impossible by opposition of the Soviet Union, the "Contractual Agreement" with the Federal Republic was signed in Bonn on May 26, 1952, and ratified by the United States Senate on July 1st, 1952. See 27 Dept. of State Bull. 67 (1952).
It is our conclusion that for the purposes of the lease the six months period after the final treaty of peace has passed, and the term of the lease has expired.
Affirmed.
THOMAS, Acting C.J., and SEBRING and MATHEWS, JJ., concur.