125 So.2d 903 (1961)
TRULY NOLEN, INC., a Florida corporation, Appellant,
v.
ATLAS MOVING & STORAGE WAREHOUSES, INC., a Florida corporation, Appellee.
No. 59-608.
District Court of Appeal of Florida. Third District.
January 5, 1961.
Rehearing Denied February 1, 1961.
Bernard B. Weksler, Mitchell M. Goldman, Anderson & Nadeau, Miami, for appellant.
Calvin C. Gould, Fred A. Jones, Jr., Miami, for appellee.
PEARSON, Judge.
The appellant, Truly Nolen, was defendant in an action brought by the appellee, Atlas, wherein Atlas prayed that the court by declaratory decree fix and determine the plaintiff's and defendant's rights and statuses under a lease for rental of space on a building wall for advertising purposes. The final decree entered by the chancellor held that the lease agreement was valid, that the defendant had repudiated the agreement and that the plaintiff was entitled to the full amount of the rentals accruing under the lease as they should fall due. In addition the court assessed as damage all past due rentals provided in the agreement and retained jurisdiction for the purpose of enforcing the final decree. We are called upon to determine whether or not the lease is unenforceable because of uncertainty. We hold the agreement to be so vague and indefinite as to be void upon its face and reverse.
The plaintiff Atlas was the lessee of a building at 251 S.W. 1st Court, Miami, Florida. The lease under which Atlas held the property permitted it to sublease the north wall of the building for advertising purposes. On April 11, 1958, Atlas and Truly Nolen entered into an agreement entitled "Lease for Rental of Building Space for Advertising Purposes". The *904 total period of the lease was five years and the rent was to be $500 per month. The agreement sought to be enforced is as follows:
"In consideration of the mutual promises and covenants herein contained, the parties hereto hereby agree as follows:
"1. The Lessor does hereby lease to the Lessee the above half and full width of the North wall of the building located at 251 S.W. First Court, Miami, Florida, for advertising purposes, the said wall space comprising approximately 2700 square feet in area.
"2. The Lessor represents that he is the tenant of the owner of said building and has the authority to make this lease.
"3. The Lessor shall pay for the cost of painting an appropriate advertising sign for the use and benefit of the Lessee, and the Lessor further agrees to illuminate the said wall area from 7 P.M. to midnight each and every evening during the term of this agreement and to pay for the electricity in connection therewith. [Emphasis supplied.]
"4. The Lessee agrees to lease the said wall space for the term of 59 months from the 1st day of May, 1958, the said Lessee paying therefor the sum of $29,500.00.
"5. The Lessee agrees to pay the said rent in monthly payments of $500.00 each on the 1st day of each and every month for the said term, the first payment to be made on or before the 1st day of May, 1958.
"6. The Lessee shall not assign this lease or sublet any part of the said wall area without the written consent of the Lessor.
"6a. The Lessor agrees to maintain the sign in first class condition at all times during the term of this lease.
"7. In the event the Lessor is in control of the building which is the subject of this lease on March 31, 1963, the Lessee shall have the option to renew this lease for additional period of 5 years. The rental to be paid to the Lessor for the second 5-year period shall be readjusted, however, to reflect any increase in fixed operating costs such as rent, taxes, and insurance.
"8. It is further agreed that the terms of this lease shall be binding upon the executors, administrators, heirs and assigns of each of the parties hereto.
"9. It is expressly understood that the parties shall not be bound by any stipulations or representations unless reduced to writing and signed by the parties hereto."
Mr. Leviten, the president of Atlas, and Mr. Nolen, the president of Truly Nolen, had been brought together by a Mr. Black of The Miami Sign Company. Mr. Nolen and Mr. Black went to the building to inspect the wall. Thereafter Mr. Leviten and Mr. Nolen agreed upon the rental of $500 per month. After the agreement was signed Mr. Nolen told Mr. Leviten that he would supply Mr. Black and Mr. Leviten with copies of advertising matter for the sign. The day after the "Lease for Rental of Building Space for Advertising Purposes" was signed Mr. Nolen called Mr. Leviten to his office and informed him that it was impossible for Truly Nolen to perform. The reason given by Mr. Nolen was that his accountant had told him the corporation could not afford the lease. After some joint efforts to find a new tenant, all of which were unsuccessful, Atlas brought its bill for declaratory decree.
A reading of the instrument in question reveals that it is not simply a lease of wall space. In addition, it provides that the lessor shall pay the cost of painting "an appropriate advertising sign for the use and benefit of the lessee". Further the lessor *905 agrees to illuminate the wall area and to pay for the electricity used. There is a further provision that the lessor is to maintain the sign in "first class condition".
It is immediately apparent that the subject matter of the contract is "an appropriate advertising sign for the use and benefit of the lessee". The contract does not set forth any specifications for the sign, nor does it even generally describe the sign.
The rule is generally recognized that for the parties to have a contract, there must be reciprocal assent to certain and definite propositions. Webster Lumber Co. v. Lincoln, 94 Fla. 1097, 115 So. 498. It is apparent that if a purported agreement is so vague and so uncertain in the specifications of the subject matter that the court cannot identify that subject matter or determine its quality, quantity or price, it will be unenforceable. This is true because the courts cannot make a contract for the parties. See Rocklin v. Eanet, 200 Md. 351, 89 A.2d 572, and cases cited therein. This same principle is expressed in Williston on Contracts, Third Edition, Section 45, where the following language is used:
"§ 45. Offers Where Something is Reserved for Future Determination. Although a promise may be sufficiently definite when it contains an option given to the promissor or promissee, yet if an essential element is reserved for the future agreement of both parties, the promise can give rise to no legal obligation until such future agreement. Since either party by the very terms of the promise may refuse to agree to anything to which the other party will agree, it is impossible for the law to affix any obligation to such a promise."
This principle of the law is well grounded in the common law. See 6 Eng.Ru.Ca. 198, where the following rule is stated:[1]
"Where after parties have apparently agreed to the terms of a contract, circumstances disclose a latent ambiguity in the meaning of an essential word by which one of the parties meant one thing, and the other a different thing, the difference going to the essence of the supposed contract, the result is that there is no contract."
In the instant case the chancellor first entered a final decree in part as follows:
"The plaintiff in bringing this declaratory decree suit necessarily accepted the premise that doubts and uncertainties existed with reference to the agreement which it was entitled to have resolved. We are, therefore, not dealing with an abstract or theoretical proposition; the prime subject being what the parties intended to accomplish by the contract itself. This requires a careful consideration of not only the words used in the agreement but the obvious purpose intended to be accomplished by it."
It was decreed as follows:
"1. That this Court has jurisdiction of the subject matter hereof and of the parties hereto.
"2. That the plaintiff, Atlas Moving & Storage Warehouse, Inc., does not have the right to enforce the agreement dated April 11, 1958.
"3. That the plaintiff is not entitled to any damages.
"4. That this cause be and the same is hereby dismissed with prejudice and at the cost of the plaintiff. Costs are to be assessed upon application."
Thereafter a petition for rehearing was filed and the rehearing was granted. A final decree in favor of the plaintiff was entered on July 15th. An examination of the testimony taken at the hearings held subsequent to the first final decree reveals *906 that nothing was brought forth which could be said to have made the presumed contract definite and certain as to the subject matter thereof. Therefore the chancellor was correct in the entry of the first final decree for defendant; the second final decree entered on July 15, 1959, is reversed. The cause is remanded with direction to enter a decree for the defendant and not inconsistent with this opinion.
Reversed.
HORTON, C.J., and CARROLL, CHAS., J., concur.
NOTES
[1] Raffles v. Wichelhaus, 2 Hurl. & Colt. 906-908.