DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**WAVEBLAST WATERSPORTS II INC., WAVE BLAST WATER SPORTS II, INC.,** and **ZACHARY CHANDLER,**
Appellants,

v.

**UH-POMPANO, LLC, URGO HOTELS LP, MARRIOTT INTERNATIONAL, INC., URGO LODGING MANAGEMENT, LLC, OCEANSIDE WATERSPORTS, INC., BOUCHER BROTHERS MANAGEMENT, INC., SERGIO COLONNA,** and **CRP/UH-POMPANO, LLC,**
Appellees.

No. 4D18-3180

[March 11, 2020]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; David A. Haimes, Judge; L.T. Case No. 14-020285.

Jeffrey M. Weissman of Weissman & Dervishi, P.A., Fort Lauderdale, and Reid S. Baker of the Law Offices of Reid S. Baker, P.A., Fort Lauderdale, for appellants.

Scott A. Simon and Ronald M. Gaché of Shapiro, Fishman & Gaché, LLP, Boca Raton, for appellees UH-Pomapano, LLC, Urgo Hotels LP, Urgo Lodging Management, LLC, and Marriott International, Inc.

Robert Kuntz Jr. of Devine, Goodman & Rasco, LLP, Coral Gables, for appellee Boucher Brothers Management, Inc.

LEVINE, C.J.

Appellant Waveblast Watersports II Inc. ("Waveblast") entered into a lease with a hotel to operate a concession to rent wave runners, parasails, and scuba diving equipment on a beach adjacent to that hotel. Subsequently, appellee UH-Pompano, LLC ("UH-Pompano"), acquired the hotel and terminated the lease. Waveblast filed a complaint as a result of the termination of the lease. The trial court entered summary judgment in favor of appellees, finding that the lease did not have a stated duration and therefore was terminable at will. We find the trial court did not err in

granting summary judgment since the lease did not include a specific end term, and as such, the language of the lease renders the duration of the lease indefinite and terminable at will. Thus, we affirm.

In 2007, Ocean Point Resort as landlord and appellant Waveblast as tenant entered into a lease for Waveblast to operate a beach concession "for the purpose of rental equipment: Wave Runners, Parasailing, Scuba Diving, Banana Rides." The lease contained the following regarding the term of the lease:

> 1. Term: this lease shall be enforced commencing on September 18, 2007 *and terminating on the demolition of the property.* During the term of this lease should hotel under go [sic] major renovations or rebuilding, the landlord at his discretion may suspend the lease until the construction is complete. At which point lease term will resume to the full term of lease. At completion of the term, Tenant is given the option to extend this lease agreement provided no defaults occur.

(emphasis added).

Three years after the execution of the lease agreement, appellee UH-Pompano acquired the Ocean Point Resort property and assumed the lease agreement with Waveblast. Several months later, UH-Pompano served Waveblast with a notice of lease termination. The notice included several reasons for terminating the lease such as the landlord was now "demolishing, reconstructing and renovating the Property" as well as stating the lease was unenforceable since the lease did not have a definite term of duration. At this point, the hotel, in fact, was renovated and the "hut" used by Waveblast was removed from the beach area.

Waveblast filed a complaint alleging that UH-Pompano improperly terminated the lease prior to the expiration of the lease and, thus, breached the lease agreement. Appellant further alleged that appellees conspired to terminate the lease and tortiously interfered with the lease.

Appellees filed answers and affirmative defenses, arguing that the lease was invalid and unenforceable for several reasons, including that it did not contain a definite statement of the term of the lease. Appellees moved for summary judgment based on the indefinite lease term, among other reasons. In opposition to summary judgment, Waveblast submitted an affidavit from its president, director, and owner, explaining that

> the lease did not include a specific end term date . . . because the original owner/landlord was contemplating demolishing/tearing down the entire hotel property sometime in the future and building condominiums (at which time the property would cease to operate as a resort/hotel) (hence the use of the word demolition).

The affidavit further stated that the hotel had been renovated, not demolished.

The trial court ultimately granted summary judgment in favor of appellees. As to the claim for breach of lease, the trial court stated:

> The Court has reviewed the subject lease and holds under any interpretation, the term, "terminating on the demolition of the property" does not provide a fixed or certain date. Therefore, because the lease does not contain a fixed or certain term, "an estate at will [was] created." Ehrlich, 63 So.2d at 913.

The trial court found that appellees terminated the lease when UH-Pompano served Waveblast with the notice of lease termination and therefore there was no breach of contract. Waveblast appeals.

The entire case essentially rests on whether the lease had a definite term of duration. If it did have a definite term, then Waveblast's allegations of breach, conspiracy, and tortious interference would be possible and summary judgment would be improper. If, on the other hand, the lease did not have a definite term of duration, then the lease becomes terminable at will, and it would not be possible as a matter of law to breach, conspire, or tortiously interfere with the lease.

"The interpretation of a lease agreement is a question of law and the applicable standard of review is *de novo*." *Covelli Family, L.P. v. ABG5, L.L.C.*, 977 So. 2d 749, 752 (Fla. 4th DCA 2008). We also review the trial court's granting of summary judgment by the de novo standard of review. *Volusia Cty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000).

A lease "must be clear, definite, certain and complete" to be enforceable. *Bay Club, Inc. v. Brickell Bay Club, Inc.*, 293 So. 2d 137, 138 (Fla. 3d DCA 1974). Further, a lease "must contain the following essential terms: (1) the names of the parties; (2) a description of the demised realty; (3) a statement of the term of the lease; and (4) the rent or other consideration." 34 Fla. Jur. 2d Landlord and Tenant § 31. Thus, for an enforceable lease

3

to exist, "there must be reciprocal assent to certain and definite propositions." *Truly Nolen, Inc. v. Atlas Moving & Storage Warehouses, Inc.*, 125 So. 2d 903, 905 (Fla. 3d DCA 1961). "[I]f a purported agreement is so vague and so uncertain in the specifications of the subject matter that the court cannot identify that subject matter or determine its quality, quantity or price, it will be unenforceable." *Id.*

"The term of a lease for years must be certain and if not, an estate at will is created." *Ehrlich v. Barbatsis Holding Co.*, 63 So. 2d 911, 913 (Fla. 1953). Further, "[l]eases in perpetuity are universally disfavored . . . ." *Chessmasters, Inc. v. Chamoun*, 948 So. 2d 985, 986 (Fla. 4th DCA 2007). Thus, if the term of duration is not certain or, in fact, appears to be running in perpetuity, that lease will be interpreted as being at will. Section 83.02, Florida Statutes, applies when a lease creates a tenancy at will:

> Where any tenancy has been created by an instrument in writing from year to year, or quarter to quarter, or month to month, or week to week, to be determined by the periods at which the rent is payable, and the term of which tenancy is unlimited, the tenancy shall be a tenancy at will. . . .

A tenancy at will may be terminated by either party by giving the requisite amount of notice. § 83.03, Fla. Stat.

We need to determine whether the term in the lease of "demolition of the property" has sufficient certainty in defining the duration of the lease. Both parties, as well as the trial court, appear to agree that the term of the lease can be interpreted as a matter of law without considering parol evidence. We disagree and find that the term "demolition of the property" is uncertain, necessitating the review of parol evidence to ascertain the intent of the parties in using this term of duration. However, we nevertheless affirm based on the tipsy coachman doctrine. *Dade Cty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 645 (Fla. 1999).

"[W]here the language used in a contract is ambiguous or unclear, the court may consider extrinsic matters . . . to explain, clarify or elucidate the ambiguous language with reference to the subject matter of the contract, the circumstances surrounding its making, and the relation of the parties." *Vienneau v. Metro. Life Ins. Co.*, 548 So. 2d 856, 859 (Fla. 4th DCA 1989); *see also Roundtree v. Smith*, 448 So. 2d 1252, 1253 (Fla. 4th DCA 1984) (holding that because duration of lease was ambiguous on its face, parol evidence would be properly admitted to resolve such ambiguity and explain the parties' intent). "[A] contract may be interpreted as a matter

of law when the ambiguity can be resolved by undisputed parol evidence of the parties' intent." *Life Care Ponte Vedra, Inc. v. H.K. Wu*, 162 So. 3d 188, 192 (Fla. 5th DCA 2015).

In this case, the undisputed parol evidence of the parties' intent is found in the affidavit of Waveblast's president, director, and owner, which explained that

> the lease did not include a specific end term date . . . because the original owner/landlord was contemplating demolishing/tearing down the entire hotel property sometime in the future and building condominiums (at which time the property would cease to operate as a resort/hotel) (hence the use of the word demolition).

The affidavit further stated that the hotel had been renovated, not demolished.

Thus, Waveblast's own president admitted that the lease was contemplated to end or terminate when the entire hotel was torn down or demolished to convert into condominiums. However, that event never happened. Instead, the hotel was sold and renovated. The unclear language of the duration of the lease, coupled with Waveblast's parol evidence demonstrating that renovation, not demolition, of the hotel took place, all leads to the conclusion that the lease was indefinite and as such terminable at will. *See Ehrlich*, 63 So. 2d at 913 ("The term of a lease for years must be certain and if not, an estate at will is created."); *Stanmeyer v. Davis*, 53 N.E. 2d 22, 23, 25 (Ill. App. Ct. 1944) (finding that a lease "for the duration of the war and until automobiles are again produced" created a tenancy at will since it lacked "reasonable certainty of the date" when the "lease should come to an end").

Because we find the lease was terminable at will, the claims for conspiracy and tortious interference also fail. *See Am. Diversified Ins. Servs., Inc. v. Union Fid. Life Ins. Co.*, 439 So. 2d 904, 907 (Fla. 2d DCA 1983) (finding no wrongful actions to support an action for civil conspiracy where contracts were terminable at will); *Greenberg v. Mount Sinai Med. Ctr. of Greater Miami, Inc.*, 629 So. 2d 252, 255 (Fla. 3d DCA 1993) ("The general rule is that an action for tortious interference will not lie where a party tortiously interferes with a contract terminable at will.").

In summary, we find that since the term of the duration of the lease was indefinite, appellees were within their right to terminate the lease at will. As such, we affirm.

*Affirmed.*

GROSS and DAMOORGIAN, JJ., concur.

$$* \qquad * \qquad *$$

**Not final until disposition of timely filed motion for rehearing.**