**LOUIS O. DUBUISSON, et al., v. JAMES RILEY SIMMONS, et al.**

26 So. (2nd) 438                                            January Term, 1946

May 28, 1946                                                          En Banc

*Coe & Eggart,* for appellants.

*Jones & Latham* and *F. Churchill Mellen,* for appellees.

BUFORD, J.:

James Riley Simmons is Assistant Chief of Police of the City of Pensacola, Florida, and under the applicable statutes he is under the Civil Service of the City of Pensacola which Civil Service is regulated by Chapter 16,867, Laws of 1935, Chapter 20061 Special Acts of 1939, which established a pension system for employees of the City of Pensacola and by Chapter 22432 Special Acts of 1943 which amended the Act of 1939.

Sub-section (c) of Section 11 as amended by Chapter 22432, supra, provided, inter alia, as follows:

"(c) Any officer or employee who becomes sixty-five years of age shall be retired and receive the pension and retirement compensation provided in this Act. . . . Provided that no employee shall be required to retire at the age of 65 years unless with the approval of the Civil Service Board, after due inquiry made by it into his physical and mental capacity for employment, so long as the present state of war with the Axis Powers or any of them, shall actively continue."

James Riley Simmons had passed the age of 65 years when the appellants herein filed their bill of complaint against Simmons and D. P. Hobgood, J. T. Baillies and Chester Griffin as Members of the Civil Service Board of the City of Pensacola, George J. Brock as City Manager of said City and J. E. Prenkel as Clerk-Comptroller thereof.

The bill alleges that the plaintiffs were police officers of the City of Pensacola and as such were employees subject to the jurisdiction of the Civil Service Board of said city, junior in rank to the defendant James Riley Simmons who is

assistant chief of police of said city and alleged that the other defendants are officers of the said city as stated.

The bill further alleges:

"That subsequent to the enactment of Chapter 22432 Laws of Florida he has become sixty-five years of age; that the State of War with the Axis Powers which was in existence at the time of the passage of said Act has ceased actively to continue, and the provisions of said Act mandatorily require that the said defendant should retire."

The bill then contains allegations to show that assuming the above quoted sentence to be true that Simmons is subject to compulsory retirement, and that upon such retirement occurring the plaintiffs are entitled to be advanced in rank as police officers under the Civil Service Law of the City of Pensacola.

Simmons filed motion to dismiss the bill of complaint.

On hearing, the Chancellor entered order as follows:

"This cause coming on to be heard upon motion to dismiss the Bill of Complaint in the above entitled cause and the Court having considered the grounds of said motion and the question as to whether or not a state of war is actively continuing against any of the axis powers, and the Court being fully advised in the premises of its opinion, and the complainants being advised of such opinion and having announced that they do not desire to amend their bill of complaint, it is therefore:

"ORDERED, ADJUDGED AND DECREED that the bill of complaint be and the same is hereby dismissed."

Plaintiffs in the court below appealed.

It is the contention of appellants that a state of war between the United States of America and the Axis Powers did not actively continue to exist at the time of the filing of the bill of complaint because the President of the United States on May 8, 1945, issued a Proclamation in which he stated, inter alias, "The Allied Armies through sacrifice and devotion and with God's help have wrung from Germany a final and unconditional surrender."—and on August 16, 1945, the President issued another Proclamation in which he said, inter alia:

"The war lords of Japan and the Japanese armed forces have surrendered. They have surrendered unconditionally;

three months after victory in Europe victory has come in the East."

These Proclamations, on our opinion, fall far short of a declaration that a state of war no longer existed between the United States and the Government of Germany or between the United States and the Government of Japan.

In United States v. Anderson, 19 L. Ed. 615, 9 Wallace 56, the Supreme Court of the United States said:

"The inquiry with which we have to deal concerns its suppression only in its relation to those persons who are within the protection of this law. It is argued, as the rebellion was in point of fact suppressed when the last Confederate general surrendered to the national authority, that the limitation began to run from that date. If this were so, there is an end to the controversy; but did Congress mean when it passed the statute in question that the Union men of the South whose interests are especially cared for by it should, without any action by Congress or the Executive on the subject, take notice of the day that armed hostilities ceased between the contending parties, and if they did not present their claims within two years of that time, be forever barred of their recovery? The inherent difficulty of determining such a matter renders it certain that Congress did not intend to impose on this class of persons the necessity of deciding it for themselves. In a foreign war, a treaty of peace would be the evidence of the time when it closed; but in a domestic war, like the late one, some public proclamation or legislation would seem to be required to inform those whose private rights were affected by it, of the time when it terminated, and we are of the opinion that Congress did not intend that the limitation in this Act should begin to run until this was done."

See also Freeborn et al. v. The Ship Protector, etc., 20 L. Ed. 463, 12 Wallace 700; Kahn v. Anderson, 65 L. Ed. 469, 41 S. Ct. 224, 255 U.S. 1.

It is a matter of common knowledge of which all courts may take judicial cognizance that at the time Chapter 22432, supra, was enacted a state of war existed between this Country and those countries known as the Axis Powers, including both

Germany and Japan. It is also a matter of common knowledge of which the courts may take judicial cognizance that there has been no Proclamation by the President and no Act of Congress of the United States by which it has been determined that such state of war has been discontinued. It is also a matter of common knowledge of which the courts may take judicial cognizance that the Armed Forces of the United States now occupy large parts of the territory formerly occupied by the Axis Powers and that such Armed Forces of the United States are in such areas actively prosecuting the purposes of war. Not only have many thousands of our troops been required to remain in these distant lands, but new troops are being sent into such territory for replacements of, and addition to, our military power and this all solely because a state of war continues to exist.

Power is not given to the courts under our system of government to determine that a state of war exists or to determine that a state of war once declared by the proper authority no longer actively continues except when such determination is based upon the affirmative Act of Congress or the Proclamation of the President or by the Adoption of a treaty of peace approved by the Senate.

It, therefore, follows that the order dismissing the bill of complaint must be affirmed.

So ordered.

CHAPMAN, C. J., TERRELL, BROWN and SEBRING, JJ., concur.

THOMAS and ADAMS, JJ., dissent.