[Civ. Nos. 3953, 3972.   Fourth Dist.   July 7, 1950.]

LA JOLLA CASA ᴅᴇMANANA (a Corporation), Respondent, v. ISABEL MORRISON HOPKINS, Appellant.

Philip Storer Thacher and Donald A. Stewart for Appellant.

W. I. Titus for Respondent.

GRIFFIN, J.—Action for declaratory relief. The appeal from the interlocutory judgment and the appeal from the final judgment in this action were consolidated for the purpose of filing briefs and will be jointly considered. Defendant, since 1924, owned and operated the Casa deManana Hotel, a resort hotel of approximately 100 rooms located on a tract of 5½ acres in La Jolla, in the city of San Diego. The property consists of the main hotel building, adjoining which are a number of cottages which are used for the accommodation of hotel guests. Defendant lived in a seven-room cottage cen-

trally located on the hotel grounds and designated as "Cottage C."

On June 1, 1944, defendant sold the hotel property to Gerald L. White and wife under a contract of sale, and since that date the hotel property has been operated by them or their successors in interest. In July, 1946, all of the Whites' interest was transferred to plaintiff corporation by written consent of defendant. The contract of sale provides generally that the consideration was $450,000, payable in certain described installments and contained a special provision that all furnishings and personal property located in Cottage C would be reserved, and defendant reserved the right under paragraph 3, to continue to personally occupy that cottage "as at present for the 'duration' and until she can reasonably build a home for herself. If first party (defendant) is unable to build within a year and a half of the termination of the present war because of restrictions or unreasonable prices, first party will pay a monthly rental for such year and a half of $150 a month." On March 24, 1947, Mr. White, who was the owner of one-fourth of the stock of the plaintiff corporation, died. Two months after his death demand was made for possession of the premises occupied by defendant. Upon her refusal this petition was filed seeking declaratory relief. Therein, it is contended by plaintiff that under paragraph 3 as above quoted, at the time the contract was entered into, it was the intention and understanding of the parties to that contract that the term "duration" and the phrase "the termination of the present war" means and referred to and should be construed as, the end of armed hostilities between the United States of America and Japan, ordinarily referred to as "V J Day," which said event occurred on September 2, 1945; that the term "restrictions" refers to governmental restrictions on the purchase and use of building materials suitable for a dwelling "and that all such restrictions were removed and became ineffective June 30, 1947, and that ever since said date no governmental restrictions have prevented defendant from building a home nor has such building been restricted because of 'unreasonable prices' inasmuch as prices of building and building materials for homes since V J Day have not been and are not now unreasonable but to the contrary are the accepted standard of prices for the construction of homes." It is then alleged that all of the time since June 30, 1947, defendant has not been prevented from building a home by reason of any

restrictions or any unreasonable prices; that despite this fact defendant failed and refused to build and continues to occupy "Cottage C" and "has at all of the times mentioned refused to give up her personal occupancy against the wishes and demands of plaintiff"; that plaintiff immediately required such space for housing hotel guests and that by reason of defendant's refusal to deliver possession of the cottage to plaintiff, plaintiff will, during the hotel season, from February first until October first, 1948, be deprived of hotel revenue in the sum of $25,000, and will suffer damage in that amount; that plaintiff and defendant cannot agree upon the true construction and meaning of paragraph 3 of the contract and that a real controversy exists. It then prays that the court declare the rights and duties of the respective parties in reference to paragraph 3, as prayed; that it be declared that plaintiff is entitled to the immediate possession of Cottage C; and finally that the court grant such further relief to the plaintiff as may be proper under all the circumstances.

By answer defendant admits many of the allegations contained within the petition but specifically alleges that building has been and still is restricted by reason of "unreasonable prices," and alleges that she was prevented from building by reason thereof. She denied that Cottage C would produce a gross revenue to plaintiff in excess of $5,000 from February 1, 1948, until October 1, 1948. She denied generally that paragraph 3 of the contract should be construed as contended by plaintiff corporation; alleged that she had expended over $2,500 in constructing an additional room on Cottage C, and prayed that the words and phrases "duration" and "termination of the present war" should be declared to mean exactly what they said, namely, the duration or termination of the present war (not hostilities) between the United States of America and Japan, Germany, Italy and others.

On stipulation of counsel it was agreed that paragraph V of plaintiff's complaint be stricken and that there be substituted in place thereof other allegations, namely, that the defendant did commence the construction of a home for herself on or about May 15, 1947, which was completed on or about February 15, 1948, and is now available to the defendant as her home; and that the defendant continues to occupy the said "Cottage C" and does now refuse to give up the personal occupancy of said "Cottage C" and continues to occupy the same against the wishes and express demand of the plaintiff. These allegations were denied generally by the defendant.

The first phase of the case was tried on April 7, 1948, and ordered submitted. On June 22, the judge filed his memorandum opinion and on July 20, findings of fact, conclusions of law, and an interlocutory judgment were signed and filed by the court.

The court found generally in favor of the plaintiff in accordance with the contentions set forth in the complaint, declared that it was the intention of the parties to the contract that the term ''restriction'' or ''restrictions'' as used in paragraph 3 of the contract should mean and refer to governmental restrictions on the purchase and use of building materials suitable for a dwelling, and that such restrictions terminated and became ineffective June 30, 1947, and that ever since that date defendant was not prevented from building a home for herself by reason of governmental restrictions or by reason of any restrictions or any unreasonable prices; that prior to February 15, 1948, defendant built and completed a home for herself in San Diego County; that ever since June 1, 1944, defendant kept Cottage C; that plaintiff made demand for possession and defendant refused it; that it was the intention of the parties that the terms ''duration'' and ''termination of the present war,'' as used in paragraph 3. mean the end of the shooting war, generally known as ''V J Day,'' which was on September 2, 1945; that defendant's contention that Cottage C would only produce a gross revenue in an amount not to exceed $5,000 between the dates alleged, was untrue; that under the contract defendant was entitled to occupy the cottage for 18 months after September 2, 1945, without rental, and that after said 18 months' period defendant agreed to pay plaintiff the sum of $150 per month until defendant could reasonably build a home for herself, which said 18 months' period ended March 2, 1947; that defendant made no payment therefor and is indebted to plaintiff in the sum of $1,715 as rental in the sum of $150 a month from March 2, 1947, to February 15, 1948, being the date she completed the construction of the home for herself. It then determined that plaintiff was entitled to the immediate possession of Cottage C and specifically found that the amount of damages suffered by plaintiff by reason of being deprived of the use and occupancy of the cottage from February 15, 1948, until delivery of possession thereof to plaintiff should be determined by the court at a subsequent hearing for that purpose. Defendant appealed from the so-called interlocutory judgment that followed.

On June 14, 1949, in this court, plaintiff moved to dismiss this appeal on the grounds that the so-called interlocutory judgment was not a final judgment. This motion was submitted for decision to be determined at this time. ▉ It appears that the so-called interlocutory judgment became final as to all its provisions except the portion thereof which was reserved for further determination in reference to the claim of damages. Therefore, the motion to dismiss should be denied. (Code Civ. Proc., § 963; *Peoples Ditch Co.* v. *Foothill Irr. Dist.*, 103 Cal.App. 321 [284 P. 514]; *Orton* v. *Daigler,* 120 Cal.App. 448 [8 P.2d 161].)

On October 18, 1948, the trial was resumed for the purpose of ascertaining such damages, if any. Testimony was had and after several continuances, that issue was submitted and the court found, in addition to the findings heretofore mentioned, that on February 15, 1948, plaintiff became entitled to the exclusive possession and use of the cottage until July 27, 1948; that until that date defendant wrongfully occupied and withheld the possession of it from plaintiff; that the value of the use and occupation thereof for that period was $5,474.38; and rendered judgment for damages accordingly. From this judgment defendant also appeals.

The first complaint is that the evidence is insufficient, as a matter of law, to support the finding of the court, particularly as to its interpretation of the intent of the parties as expressed in paragraph 3 of the agreement. The main claim is that the uncontradicted evidence as to the interpretation given the original contract by the parties thereto does not support the findings.

The attorney who assisted defendant in drawing the agreement testified that he represented the defendant at the time; that in the original agreement objection was made by Mr. White to any provision in the agreement for the perpetual right of occupancy for Mrs. Hopkins, and that the parties agreed that she was to be protected in its use in case the war continued; that the last war continued for over two years after actual cessation of hostilities, and that they could not tell how long this war was to last or when hostilities would cease; that she appreciated Mr. White's objection and his position and would be willing to pay a reasonable rent if it continued indefinitely and she continued to occupy it; that Mr. White said that was not unreasonable and he suggested that the contract be worded as it now reads.

Defendant testified that they discussed the meaning of the words "duration" and "termination of war"; that she said "duration" did not mean the end of hostilities; that she remembered the "duration" after the last war and that it lasted until Congress declared the war over, which was more than two years after hostilities ceased; that they discussed the fact that the "duration" might continue indefinitely and that she agreed, in that case, to pay sufficient rent to cover utilities and upkeep, and Mr. White did not dissent but said he understood; that there was conversation between them as to building costs; that she was to occupy the cottage until she could reasonably build a home; that they discussed the original cost of the building of "Cottage C"; that she stated it was built at $4.50 per square foot; that she could not then build at less than $9.00 per square foot and that Mr. White said that that price was unreasonable and would not be expected.

In this connection it is also argued by defendant that since Mr. White never made demand on her for possession of Cottage C during his lifetime, that fact clearly indicated that he never intended the construction placed upon the agreement by the trial court.

Counsel for plaintiff announced that since Mr. White was dead, he was unable to directly contradict this testimony but relied upon the contract as worded and the surrounding circumstances, as developed, to maintain his position as to the intention of the parties at the time of the making of the agreement, as claimed in the complaint.

In support of her contention defendant cites such cases as *Fidelity & Casualty Co.* v. *Abraham*, 70 Cal.App.2d 776 [161 P.2d 689] ; *Gomez* v. *Cecena*, 15 Cal.2d 363 [101 P.2d 477] ; and *Jewett* v. *Albin*, 90 Cal.App. 535, 543 [266 P. 329], which are to the effect that uncontradicted and unimpeached testimony of a witness which is not inherently improbable, cannot be arbitrarily disregarded and should be accepted as true by the trier of facts where it is not found that the testimony was false, in which case the appellate courts must presume it was true. There is no argument about this general rule. However, this general rule is subject to many exceptions and limitations. An appellate court cannot control a finding or conclusion denying credence, unless it appears that there are no matters or circumstances which at all impair the accuracy of the testimony, and a trial judge has an inherent right to disregard the testimony of any wit-

ness, or the effect of any prima facie showing based thereon, when he is satisfied that the witness is not telling the truth or his testimony is inherently improbable due to its inaccuracy, due to uncertainty, lapse of time, or interest or bias of the witness. All of these things may be properly considered in determining the weight to be given the testimony of a witness although there be no adverse testimony adduced. The trial judge is the arbiter of the credibility of the witnesses. A witness may be contradicted by the facts he states as completely as by direct adverse testimony, and there may be so many omissions in his account of particular transactions or of his own conduct as to discredit his whole story. His manner of testifying may give rise to doubts of his sincerity and create the impression that he is giving a wrong coloring to material facts. (*People* v. *Frankenthal*, 91 Cal.App.2d 189 [204 P.2d 614, 617] ; *Burns* v. *Radoicich*, 77 Cal.App.2d 697 [176 P.2d 77].) Where conflicting inferences may be drawn from testimony, this court is bound by the findings of the trial court as conclusively as in other cases of conflict. (*Garcia & Maggini Co.* v. *Sanfilippo*, 56 Cal.App. 348 [205 P. 74].)

The parol testimony of the two witnesses in aid of the construction of the intention of the parties was somewhat at variance in and of itself. Mrs. Hopkins' remembrances of the conversation went considerably farther than that of her counsel in stating the claimed conversation. Her interest in the outcome of the proceedings could be considered in determining the truth of her testimony. The great lapse of time between the date of the conversation and the time of trial was likewise a factor to be considered. If all these matters were so thoroughly discussed, as contended by defendant, it seems peculiar they were not put into the agreement in definite form, particularly when defendant was represented by counsel who drew the agreement. Since Mr. White was dead and could not refute that testimony, we are not prepared to hold that the trial court was bound to accept their testimony as true.

Here, too, a strong presumption arose under the holding in *George Herz & Co.* v. *Solt*, 23 Cal.App.2d 178 [72 P.2d 251], where it is held that if there is any ambiguity in a contract that may reasonably bear one of two constructions, then the construction most favorable to the parties who did not prepare the contract and were not responsible for the ambiguity should be adopted. (See, also, *Southern California Finance Co.* v. *Davis*, 120 Cal.App. 79 [7 P.2d 744].)

We conclude that the trial court was authorized to consider this presumption, the conflicts in the testimony, the surrounding circumstances and the actual wording used in the agreement in determining the intent of the parties. Accordingly, the trial court was not bound to accept as true the testimony of the defendant and her counsel as to the conversation which they claimed ensued at the time of the execution of the agreement.

Defendant cites *Silva* v. *Mercier,* 33 Cal.2d 704 [204 P.2d 609], in support of her contention that the trial court erred in its construction of the terms used in paragraph 3 of the agreement. That case involved a collective bargaining contract and involved the term ''cessation of the present war.'' The Supreme Court, in effect, there held that the construction of that term, as contemplated by the parties, should be decided by the trial court after considering any competent evidence that would throw light upon it. To the same effect is *Malbone Garage, Inc.* v. *Minkin,* 272 App.Div. 109 [72 N.Y.S.2d 327], affirmed in 297 N.Y. 677 [76 N.E.2d 331], cited by defendant and quoted at length. Defendant relies upon other cases therein cited, as well as *Citizens Protective League* v. *Byrnes,* 64 F.Supp. 233, 234; *Bowles* v. *Soverinsky,* 65 F.Supp. 808, 813; and *Dubuisson* v. *Simmons,* 157 Fla. 473 [26 So.2d 438]. Many of the cases cited involve wartime statutes, war regulations and different contracts or agreements from the one here under consideration. The underlying principle of the authorities that we have examined, as applied to such agreements as here involved, is that courts should attempt to give words and phrases used in contracts the natural meaning or that meaning most commonly understood when considered in reference to the subject matter and circumstances. (See *Rupp Hotel Operating Co.* v. *Donn,* 158 Fla. 541 [29 So.2d 441]; *New York Life Ins. Co.* v. *Durham,* 166 F.2d 874; *Stinson* v. *New York Life Ins. Co.,* 167 F.2d 233; *New York Life Ins. Co.* v. *Bennion,* 158 F.2d 260, 265; *Arroyo* v. *Puerto Rico Transportation Authority,* 164 F.2d 748, 752.)

In *Samuels* v. *United Seamen's Service,* 68 F.Supp. 461, 462, also cited in 165 F.2d 409, it was stated that it would be a very simple matter to indicate if the terms ''duration'' or ''termination of the war'' were to be by Presidential or Congressional action and, not having done so, said terms should be given the meaning of ''the end of hostilities.'' (See, also, *Lincoln* v. *Harvey* (Tex.Civ.App.), 191 S.W.2d 764.)

■  The statement in paragraph 3 that defendant reserves the cottage "until she can reasonably build a home for herself," and if she is "unable" to build within a year and a half from the termination of the present war, because of restrictive or unreasonable prices, she should pay a monthly rental thereafter of $150 a month is subject to interpretation by the trial court under the same rule above discussed. The question before the court was, what was the intent of the parties in this respect?

It is conceded that defendant did build a home for herself at Warner's Hot Springs which was completed on February 15, 1948. She argues that since she expected to use it only for a summer cottage and since it cost her $30,000 instead of the $10,500 which she anticipated, it could not be considered that that was the home that was contemplated in the agreement, nor could it be considered that she was *able* to build *at reasonable prices,* and, accordingly, that she was entitled to occupy "Cottage C" at $150 a month under the agreement until such time as she could reasonably build in La Jolla. The court's interpretation of the intention of the parties, as gleaned from the evidence and the paragraph under consideration, is reasonable and does not do violence to the agreement as worded. Accordingly, this court may not substitute another interpretation should it be so inclined. (*Tide Water Assoc. Oil Co.* v. *Curtin,* 41 Cal.App.2d 884 [107 P.2d 945].)

■  The last issue involves the appeal from the judgment awarding damages. The first complaint in this respect is that the issue of damages was not within the pleadings. We see no merit to this contention. Paragraph 6 of plaintiff's petition for declaratory relief asks for "such relief as may be proper," and alleges damages in the sum of $25,000 by reason of deprivation of hotel revenue during the period defendant wrongfully and unlawfully retained possession of the cottage. Defendant, in her answer, denied any such damage, and alleged that it did not exceed $5,000. The trial court proceeded to hear evidence on the subject and the case was tried on the theory that damages were involved under the pleadings.

■  When a court of equity once obtains jurisdiction of a case it will decide the whole case between the parties and not leave any part of it for future litigation. (*Bettencourt* v. *Bank of Italy etc. Assn.,* 216 Cal. 174 [13 P.2d 659]; *Zimmer* v. *Gorelnik,* 42 Cal.App.2d 440 [109 P.2d 34]; *American Telephone & Telegraph Co.* v. *California Bank,* 59 Cal.App.2d 46 [138 P.2d 49]; *Martin* v. *Durand,* 63 Cal. 39.)

The second complaint is that the evidence was insufficient to support the judgment for damages. A judgment was entered for the agreed rental up to March 2, 1947, at $150 per month, totaling $1,715, as provided for in the contract. This portion of the judgment must be sustained under the findings.

The damages allowed, under the reservation order, covered the period beginning February 15, 1948, the date when defendant completed building her home at Warner's Hot Springs, and the time the court fixed as being the time when defendant should have relinquished possession under the agreement. That period ended on July 27, 1948, the time when defendant moved out of and surrendered possession of Cottage C. The value of that wrongful use and occupation was fixed at $5,474.38. The evidence establishing the basis for this award is predicated upon the testimony of the hotel manager, who testified that by a change in the suite set up, by locking off certain rooms, renting them individually, and refurnishing them, he could make them available for hotel occupation; that under this set up he could and did later receive a total gross rental of $84 per day for the premises during winter and summer seasons and $70 per day during off-season; that this amount would not include the associated income that the plaintiff would naturally have from the sale of beverages, meals and other services in connection with the hotel if the rooms had guests occupying them. Volumes of evidence were then produced, under section 3334 of the Civil Code, in an endeavor to show the cost of operation of the several units of the hotel and what the net rental value or net return to the corporation would be for the rental of the rooms for the period in question. Defendant produced testimony of one witness that in his opinion the rental value of the particular cottage in question, *as an unfurnished residence,* would be approximately $300 per month.

While some of the evidence produced by plaintiff and received by the court showing loss and gain in the several departments of the hotel was difficult of analysis and appeared to be somewhat remote, immaterial or incompetent, there was sufficient competent evidence to justify the finding that the value of the reasonable occupation and use of the premises was greatly in excess of the amount actually allowed. This finding cannot be disturbed on appeal. (*Shook* v. *Beals,* 96 Cal.App.2d 963 [217 P.2d 56]; *Calidino Hotel Co.* v. *Bank*

*of America,* 31 Cal.App.2d 295, 311 [87 P.2d 923] ; *Landon* v. *Hill,* 136 Cal.App. 560 [29 P.2d 281].)

Motion to dismiss appeal denied.  Judgments affirmed.

Barnard, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied August 1, 1950, and appellant's petition for a hearing by the Supreme Court was denied August 31, 1950.