Filed 2/1/22  Taylor v. Almanza CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| POLLY ELISE TAYLOR,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MARIA SOCORRO ALMANZA,<br><br>        Defendant and Appellant. | A162655<br><br>(San Francisco County Super. Ct. No. CCH20583059) |
| MARIA SOCORRO ALMANZA,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>POLLY ELISE TAYLOR,<br><br>        Defendant and Respondent. | A162682<br><br>(San Francisco County Super. Ct. No. CCH20583274) |

Appellant Maria Almanza and respondent Polly Taylor each petitioned for a civil harassment restraining order against the other based on alleged verbal and physical altercations they had as neighbors living in the same building.  The trial court granted Taylor's petition and denied Almanza's petition pursuant to Code of Civil Procedure section 527.6.[1]  Almanza appeals

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

1

both rulings, arguing the court abused its discretion in denying her request to testify at the evidentiary hearing. We agree and reverse.

## BACKGROUND

In August 2020, Taylor filed a petition for civil harassment restraining order. It alleged that Almanza had "threatened and verbally and physically attacked [Taylor] on more than 14 occasions" and included an "itemized breakdown" of each incident. On February 28, February 29, March 9, April 1, and April 14, 2020, Almanza sent "harassing" text messages to Taylor or her husband. On February 29 and March 5, 2020, Almanza blocked Taylor's path through the building and pushed her. On April 24, 2020, Almanza knocked on Taylor's door and Taylor's children answered, but when Taylor told them to close the door Almanza entered the apartment and yelled at Taylor. Later that night, Almanza followed Taylor out of the building, punched her three times, and tried to choke her. Taylor called the police.

In November 2020, Almanza filed a response disputing these allegations. Almanza also filed her own petition for civil harassment restraining order against Taylor. It alleged a series of altercations between Taylor and Almanza, including six other specific incidents not mentioned in Taylor's petition. In February 2020, Taylor had demanded that Almanza be evicted from the building. Starting in March 2020, Taylor repeatedly called Almanza racial slurs such as " 'wetback" and " 'undocumented,'" and threatened her to " 'go back' " to her own country or face the consequences. On April 24, 2020, Almanza never stepped inside Taylor's apartment, but only talked with the children about Almanza's missing dog. Later that night, Taylor spotted Almanza outside and began shouting racial slurs and insults, Almanza slapped Taylor, and Taylor attempted to hit Almanza in the head with a phone. Almanza also called the police. On September 16, 2020, Taylor

2

pushed Almanza against a wall in the building. On September 21, 2020, Taylor told Almanza that if she didn't leave her home, Taylor and her husband would "kill [her]." On October 8, 2020, Taylor told Almanza that if she didn't move out the next day, she would tell the police that Almanza hit Taylor's children. Almanza's petition also requested $7,300 in attorney fees.

In advance of the hearing on the petitions, Almanza filed trial briefs related to each matter. The briefs estimated that the hearing would take approximately two hours, and listed Almanza and Taylor as potential witnesses. They also attached various exhibits, including the police report containing Almanza and Taylor's statements regarding the April 24, 2020 incident.

At the March 2021 hearing, the court began by stating that the case contained "a lot of allegations" and "comes down to the petitioner says one thing in her petition against the respondent, respondent says something in her petition against the petitioner. . . . And each one of them are denying what the other one alleges." The court explained that "in [my] review thus far, I don't find clear and convincing evidence of either. And so I need counsel to tell me why the court should issue a restraining order in this case when there's nothing that I can see that[] substantiates either side or corroborates either side." The court continued: "It just seems like two people who don't like each other, who can't get along, and each one is making allegations about the other. I don't know that any of it is true; I don't know if all of it is true. And I found nothing in the file that convinced me either way about either one of them; so you're going to have to convince me, but you only have so much time to do so."

Counsel for Taylor proceeded to introduce a declaration from Taylor's husband regarding the February 29, 2020 incident. The declaration stated

3

that Taylor's husband could "hear a commotion and then saw Maria Almanza in an aggressive stance . . . blocking my wife from being able to exit the building[.]" The court admitted the declaration into evidence, and found that "it does corroborate at least one of the incidents that Ms. Taylor described in her documentation." Counsel then introduced a 15-second video of the April 24, 2020 incident inside Taylor's apartment. Without being sworn in, Taylor stated that she "didn't do a very good job of videotaping," but the video showed her telling Almanza to get out of her apartment. The court responded: "Thank you." Counsel also introduced a declaration from a friend of Taylor regarding the subsequent altercation outside of the building. The declaration stated that Taylor was on the phone with her friend when Almanza approached, and the friend heard a "woman's voice say 'crazy bitch, crazy bitch' " and Taylor yell for help to call the police. The court admitted the declaration into evidence, and found that it "corroborates" what Taylor alleged in her petition.

The court then asked to hear from Almanza's counsel. Counsel sought clarification from the court on how it wanted her to proceed. The court stated: "[Y]ou're either going to be offering an offer of proof of evidence" or "you can have your client—do it just like plaintiff's attorney did." Counsel responded that the evidence submitted in Almanza's trial brief exhibits "is our evidence as of right now." The court asked if she had "evidence to respond to," like "[a] video that says those incident[s] did not occur?" Counsel responded: "No." The court then asked: "So you don't have any additional evidence at this time?" Counsel responded: "No additional evidence, Your Honor."

The court then requested five-minute summations by counsel. During the summation by Taylor's counsel, the court interjected: "Okay. Now, I

4

don't mean to be rude, but we've got a lot of hearings. [¶] I know what the facts are. So if you want to tell me why I should believe your client, then that's what I wanted you to address." During the summation by Almanza's counsel, the court again interjected that she was "doing what I told petitioner's attorney not to do." It stated: "I wanted to know if you had any more argument that supports a finding of corroborating why should I—what evidence—[¶] What argument can you make as to why I should believe your client as opposed to Ms. Taylor?"

Almanza's counsel continued, agreeing with the court that it was a "he said/she said situation" and then stating: "[Almanza] also asked me if she could address the court as well. She would really like to speak to you on all of the absolute . . . ." The court interjected: "No. I asked you if you had evidence. Any evidence." It stated: "And if you had wanted your time to speak, that was the time to do it. I said, now we're going to do a five-minute summation each, and I'm going to rule. I don't want to disrespect anyone. We have some procedures, and we have a bunch of hearings today." The court then asked counsel to speak with Almanza to determine whether she had "any new evidence, other than what is already submitted and I've already heard?" Almanza's counsel responded: "No, she does not, Your Honor."

The court granted Taylor's petition and issued a three-year restraining order against Almanza. It began: "Well, then, I think I have all the evidence. You made arguments, and I appreciate that. And I've heard from both sides. I actually gave you more time than I had anticipated, given what we have here today. [¶] And I told you what my initial problem was and questions that I have, and I do feel that some of my questions have been—I've been

satisfied. [¶] And there is an issue of credibility. And I was very concerned I didn't have supporting evidence for one side as opposed to the other."

It continued: "I do now, and I must say I find that Ms. Taylor . . . has more credible evidence. And she's supported her allegations." It stated that the video of the April 24, 2020 incident "speaks for itself" showing the "naked footsteps" of Almanza coming into Taylor's home, and that it did not find Almanza's version of the incident credible because "I don't know why she'd put herself in a dangerous situation by going into her house, especially when she's being told not to come in." The court denied Almanza's petition, finding that Almanza had made only "allegations" and there was "no supporting evidence for her versions of it."

## DISCUSSION

We begin with a general overview of the procedures applicable to a civil harassment restraining order. Section 527.6 provides injunctive relief to a person who has suffered harassment. (§ 527.6, subd. (a)(1).) Harassment is defined as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." (*Id.*, subd. (b)(3).)

Section 527.6 allows a person to seek a temporary restraining order and "an order after hearing" that prohibits such harassment. (§ 527.6, subd. (a)(1).) "Although an initial temporary restraining order may be obtained ex parte on affidavit, the statute requires a more formal procedure for obtaining what approximates a permanent injunction." (*Schraer v. Berkeley Property Owners' Assn.* (1989) 207 Cal.App.3d 719, 732 (*Schraer*).) "This more formal procedure is required by due process" because "the

6

hearing . . . provides the only forum the defendant in a harassment proceeding will have to present his or her case. (*Id.* at pp. 732–733.)

"At the hearing, the judge *shall receive any testimony that is relevant*, and may make an independent inquiry." (§ 527.6, subd. (i), italics added.) Then, if the court "finds by clear and convincing evidence that unlawful harassment exists, an order shall issue prohibiting the harassment." " ' "Clear and convincing" evidence requires a finding of high probability.' " (*Russell v. Douvan* (2003) 112 Cal.App.4th 399, 401 quoting *In re Angelia P.* (1981) 28 Cal.3d 908, 919.) This threshold is nonetheless subject to the general rule that the testimony of a single witness, including that of a party, may be sufficient to support such a finding of fact. (See *Doe v. Regents of University of California* (2016) 5 Cal.App.5th 1055, 1074; *In re Marriage of Mix* (1975) 14 Cal.3d 604, 614.) Section 527.6 also provides that the prevailing party in the action may be awarded attorney fees and court costs. (§ 527.6, subd. (s).) Moreover, any "[w]illful disobedience" of the restraining order granted after hearing is punishable as a misdemeanor. (*Id.*, subd. (t).)

With these procedures in mind, we turn next to the particular posture of Almanza's request to testify here. Almanza acknowledges that her request was made after counsel indicated there was no additional evidence to present. Almanza thus argues her request was the "functional equivalent of a motion to reopen for further evidence." We agree that the request, made during summation by counsel, "amounted in legal effect to a motion to reopen in order to produce additional evidence." (*Guardianship of Phillip B.* (1983) 139 Cal.App.3d 407, 428 [appellants' attempts to call additional witnesses on the day set for argument was functional equivalent of motion to reopen].)

We review the court's denial of a motion to reopen for abuse of discretion. (*Guardianship of Phillip B.*, *supra*, 139 Cal.App.3d at p. 428.)

7

"While a court has a wide discretion in passing upon such a motion this discretion should be exercised in accordance with legal principles and in accordance with the ends of justice." (*Christina v. Daneri* (1937) 22 Cal.App.2d 190, 193.) In determining whether an abuse of discretion occurred, we may also consider the materiality of the proffered evidence, whether the evidence would have rendered a different result, and whether the party was diligent in raising the request. (*In re Estate of Horman* (1968) 265 Cal.App.2d 796, 809 (*Horman*).) Almanza argues that each of these factors supports the conclusion that the court abused its discretion here. We agree.

First, given the particular circumstances of the hearing as reflected in the record, we conclude that the court should have granted Almanza's request in order to promote justice and afford her the opportunity to present relevant testimony as required by section 527.6. We find *Schraer* instructive on this point. In that case, the respondents petitioned for a harassment injunction. (*Schraer*, *supra*, 207 Cal.App.3d at p. 725.) The parties submitted written declarations, as well as various newspaper articles and clippings, to the trial court. (*Ibid.*) There was no live witness testimony. (*Ibid.*) The trial court "appeared to indicate several times that it could not decide the matter at that point without more evidence," but "declined to permit live testimony or cross-examination of declarants." (*Ibid.*) *Schraer* reversed the issuance of the injunction. (*Id.* at p. 733.) It explained that "if it is offered, relevant oral testimony must be taken from available witnesses" and that limitations on a defendant's right to present evidence and cross-examine witnesses "run the real risk of denying such a defendant's due process rights, and would open the entire harassment procedure to the possibility of successful constitutional challenge on such grounds." (*Ibid.*) Similarly, in *Nora v. Kaddo* (2004)

116 Cal.App.4th 1026, the parties sought to present testimony in addition to the declarations and exhibits attached to the petitions for mutual restraining orders. (*Id.* at p. 1028.) The trial court "indicated that testimony was unnecessary, as it was prepared to rule on the papers presented by the parties" and entered both orders. (*Id.* at pp. 1027–1029.) *Nora* concluded that this ruling "deprived both parties of important rights that the statute expressly preserved to them." (*Id.* at p. 1029.)

So too here. Despite Almanza's prior identification of herself and Taylor as potential witnesses and estimation of a lengthy hearing, the court took no live testimony. The court also made clear at the outset of the hearing that it was not prepared to issue a restraining order for either party in the absence of additional evidence. The court then permitted Taylor to introduce written and video evidence to corroborate her allegations. But it also allowed Taylor to make a statement, without being sworn in to testify, regarding the contents of the video footage.

The court then told Almanza's counsel that she could present her case "just like plaintiff's attorney did." When counsel cited the trial brief exhibits, the court asked whether Almanza had any corroboration, such as "video," to support her version of the incidents with Taylor. Nothing in the record suggests that the court contemplated live testimony at the hearing. Then, when Almanza did request to testify, the court declined to exercise the same flexibility it appeared to exercise when Taylor offered statements about her video footage, telling Almanza it was too late and the court had "a bunch of hearings today."

Second, the record shows Almanza's proffered testimony was significant because her credibility was a key issue in the case. At the beginning of the hearing, the court indicated that it was not convinced of

9

either party's allegations: "I don't know that any of it is true; I don't know if all of it is true. And I found nothing in the file that convinced me either way about either one of them; so you're going to have to convince me, but you only have so much time to do so." During the summations, the court asked counsel to argue why it should believe either Taylor or Almanza. However, the court then refused to allow Almanza to testify so that it could appropriately evaluate her credibility. (See *La Jolla Casa de Manana v. Hopkins* (1950) 98 Cal.App.2d 339, 345–346 ["The trial judge is the arbiter of the credibility of the witnesses"]; *Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 583 ["At the trial stage, however, the fact finder must evaluate witness testimony and resolve disputed issues of fact, because the mission is to find the truth amidst conflicting claims"].) After denying Almanza this opportunity, the court nonetheless made findings related to her credibility: for example, it found Almanza's version of the April 24, 2020 incident was not credible because "I don't know why she'd put herself in a dangerous situation by going into her house, especially when she's being told not to come in."

Third, we agree with Almanza that her proffered testimony "might well have" rendered a different result in this case. (*Horman, supra*, 265 Cal.App.2d at p. 809.) While Taylor provided declarations and video regarding the incidents on February 29 and April 24, 2020 that the trial court found to corroborate her version of the events, the parties had alleged there were *17 other specific altercations* between them. At the very least, Almanza could have provided relevant testimony that established harassment as to those other incidents and affected the court's ruling on both petitions. Almanza's testimony could have also altered the court's credibility determination regarding the February 29 and April 24, 2020 incidents, given

10

the weakness of the "corroborating" evidence provided by Taylor. The declarations from Taylor's husband and friend make clear that neither actually witnessed the alleged physical altercations with Almanza. Taylor's husband only saw that Almanza was posed in an "aggressive stance," and the friend only heard "a woman" (which she did not actually identify as Almanza) yelling before Taylor called for help. Moreover, contrary to the court's description, the video footage from April 24, 2020, shows *Taylor's* bare feet walking in her apartment toward the front door to confront Almanza; it never shows Almanza actually inside the apartment.

Finally, we recognize that Almanza's counsel acted diligently in raising the request before the court issued its ruling. (See, e.g. *Horman*, *supra*, 265 Cal.App.2d at p. 806 [trial court can reopen for additional evidence after minute order and before judgment].) Given that Almanza's trial brief had listed her as a witness, her testimony would not have unfairly surprised Taylor. On the other hand, Almanza was prejudiced by this result because she was unable to provide any testimony for the court to consider in its determination of her credibility. (*Ibid*.) The court denied Almanza this opportunity despite all she had at stake: her petition for restraining order and associated request for attorney fees, the potential issuance of a multi-year restraining order against her, and the potential for criminal liability associated with non-compliance of such an order.

For all of the above reasons, we conclude that the trial court abused its discretion in denying Almanza's request to testify.

## DISPOSITION

The order granting Taylor's restraining order against Almanza, and the denial of Almanza's petition for restraining order against Taylor, are reversed

and the matter is remanded for further evidentiary hearing on the parties' petitions.  Costs on appeal are awarded to Almanza.

_____
Mayfield, J.*

We concur:


_____
Stewart, Acting P.J.


_____
Miller, J.


*Taylor v. Almanza* (A162655, A162682)


\*Judge of the Superior Court of Mendocino County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.