Filed 1/3/23 P. v. Robinson CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>OLYRIC ROBINSON,<br><br>    Defendant and Appellant. | C095260<br><br>(Super. Ct. No. 21PA012234) |

Defendant Olyric Robinson's parole was revoked after the trial court found he fled the scene of an injury accident within the meaning of Vehicle Code[1] section 20001, subdivision (a), in violation of the parole condition that he would not engage in conduct prohibited by law.[2] Defendant challenges the judgment for lack of substantial evidence. We conclude there was substantial evidence to support the trial court's finding that a

---

[1]    Undesignated section references are to the Vehicle Code.

[2]    Although a section 20001, subdivision (a) offense "is commonly referred to as a hit and run, . . . the offense is 'more accurately described as fleeing the scene of an injury accident.' " (*People v. Martinez* (2017) 2 Cal.5th 1093, 1102.)

1

preponderance of the evidence showed defendant committed the offense. The trial court thus did not err in revoking defendant's parole, and we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

I

*The Parole Agent's Testimony*

While supervising defendant on parole, Parole Agent Nicholas Brady received a phone call from Elicia B., an individual with whom defendant had a romantic relationship. Elicia B. informed Agent Brady that, about a month earlier, during an altercation between her and defendant in Elicia B.'s apartment complex parking lot, defendant hit her with a car and, after she fell to the ground, accelerated and ran over her leg with a tire. Elicia B. said their friend was present at the scene and tried to help her, but defendant stopped him from doing so.[3] Defendant and the friend then left the scene in the car, and Elicia B. transported herself to the hospital. Elicia B. reported she sustained scrapes and bruises to her right leg. Elicia B. and Agent Brady scheduled to meet the next day for Elicia B. to provide a written statement.

The next morning, when Agent Brady arrived at the office, he texted Elicia B. the address; Elicia B. responded, "[g]ot it." Shortly after, defendant called Agent Brady and asked if he was under investigation. Agent Brady told defendant that he could not divulge any such information and asked defendant if there were any issues he wanted to disclose; defendant responded he did not. Shortly after, Elicia B. informed Agent Brady that she would not attend the scheduled meeting because defendant's cousin was "stressing [her] out." Agent Brady called and texted Elicia B.; he asked her to return his call, but she texted back, "no." Agent Brady then talked to the friend who witnessed the incident. The friend corroborated Elicia B.'s version of the events and provided further detail. Agent Brady called defendant and told him to come to his office the next day.

---

[3]      It is unclear what defendant did to stop the friend from rendering assistance.

2

The following day, Agent Brady questioned defendant regarding the incident. Defendant said he drove Elicia B.'s car to her apartment complex with Elicia B. in the rear passenger seat and the friend in the front passenger seat. Defendant and Elicia B. got into a verbal altercation. Elicia B. got out of the car and threw a bottle of alcohol at defendant. She then threw a second bottle at him, at which point defendant "ended up accelerating." Defendant first told Agent Brady "he did not hit her at all, [or] strike her with the car. Then he ended up stating he may have bumped her knee with the vehicle, but he denied ever striking her with the vehicle, denied that she ever fell to the ground or [that he] ever hit her with the vehicle in any kind of way."

Following the conversations with defendant, Elicia B., and the friend, Agent Brady searched defendant's phone and found text messages between defendant and Elicia B. Agent Brady testified that in a message sent the day after the incident, Elicia B. wrote, "I need to go to the [emergency room] to get my leg, hip, and back checked but don't know what to do when they ask me what happened." In another message, Elicia B. wrote, "I'm fine, just have a few bruised chin bones from [the] incident but I will live." At one point, defendant wrote, "I never want you hurt, Eli. I explained I panicked, accelerated when I thought I was in park." Defendant also wrote, "And what am I supposed to tell my [parole officer]?" Elicia B. responded, "That you've been lying about everything. All I need or want to know is why? Why me?"

After defendant was taken into custody, Elicia B. informed Agent Brady that she and defendant "resolved their issues, their relationship [was] back together, and she [did] not want to press charges and be responsible for [being] the one to put [defendant] back in prison. So she wasn't going to press charges or file a police report."

## II

### *Elicia B.'s Testimony*

Elicia B. testified to the following version of events at the parole revocation hearing. On the day in question, defendant, Elicia B., and their friend went shopping.

After they finished shopping, defendant drove them to Elicia B.'s apartment to drop her off. The three of them argued during the drive and the heated discussion continued as Elicia B. got out of the car. When defendant said he was going to leave, Elicia B. stood next to the car with the rear passenger door open and told him to "[h]old on" to prevent him from leaving. Defendant's "foot [then] slipped off the pedal, and [Elicia B.] kind of went forward when the car went forward." Defendant put the car in reverse and Elicia B. fell backward as the car jerked backward. The friend yelled "[s]top, stop. You hit her with the car." Defendant did not immediately leave the scene of the incident. He packed up some of his things, and Elicia B. "was calling back and forth to make sure everything was okay." Elicia B. offered to drive defendant home, but he declined and called a rideshare service. Elicia B. left the scene in her car with the friend and noticed she was having trouble driving and had a bruise on her leg.

Elicia B. denied that defendant hit her with the car and testified that the only part of the car that contacted her body was the door. Elicia B. further denied seeing defendant push the accelerator and described the movement of the car as "a very simple . . . jerk action." Elicia B. also testified she did not ask for medical treatment during or after the incident, did not call for an ambulance, and did not go to the hospital immediately.

When asked about her communication with Agent Brady, Elicia B. testified he called her and requested that she make a statement and press charges, but she refused. Elicia B. did not recall calling Agent Brady to report the incident but said she had called him before for unrelated reasons. Elicia B. further denied telling Agent Brady that she had a verbal altercation with defendant, defendant ran into her with the car, she drove herself to the hospital, her leg sustained bruises, she would file a formal report, and she did not want to be the reason why defendant would go to prison.

4

## III

### *The Trial Court's Findings*

The trial court found by a preponderance of the evidence that defendant violated the terms and conditions of his parole by fleeing the scene of an injury accident within the meaning of section 20001, subdivision (a) because defendant knew he was involved in an accident that caused injury to another person and failed to stop immediately at the scene of the accident and render aid. The trial court acknowledged that, given there were two competing versions of the events, the outcome turned on which version of the facts it found credible. The trial court reasoned that, if it were to believe Agent Brady's testimony regarding Elicia B.'s prior statements rather than Elicia B.'s testimony, the elements of the offense were satisfied because (1) Elicia B. said defendant ran over her leg, which caused injury, and (2) defendant left the scene, requiring Elicia B. to drive herself to the hospital.

The trial court explained it must consider certain factors in determining the believability of a witness, including whether "the witness's testimony [was] influenced by a factor such as bias or prejudice, a personal relationship with someone involved in the case, or a personal interest in how the case is decided." The trial court compared Elicia B.'s testimony on the stand to the other evidence and found inconsistencies. First, Elicia B. testified that defendant only bumped her with the car, but she told Agent Brady defendant ran over her leg with the car. Second, Elicia B. testified she did not have to go to the hospital, but in her text message to defendant, she said she needed to go to the emergency room to have her leg, hip, and back examined. Third, Elicia B. testified that Agent Brady called her first, but Agent Brady learned of the incident only after Elicia B. called him.

The trial court also acknowledged the relationship between Elicia B. and defendant, and that Elicia B. stated to Agent Brady that she did not want to be responsible for sending defendant back to prison. The trial court further considered Elicia B.'s

testimony that she has short-term memory issues, "[b]ut that only came into play when she was confronted with her initial statement to Agent Brady." The trial court in sum found "[Elicia B.'s] testimony on the stand lack[ed] . . . credibility, [and] that her statement[s] to Agent Brady [did] not lack that credibility."

Finally, the trial court explained defendant's text message reading, "I panicked, accelerated when I thought I was in park," was sufficient to show he knew there was an accident in which Elicia B. may have been seriously injured and he failed to stop. The trial court found defendant violated section 20001, subdivision (a) and revoked defendant's parole.

DISCUSSION

A parolee is subject to arrest at any time during the period of parole "if any parole agent . . . has probable cause to believe that the parolee is violating any term or condition of his or her parole." (Pen. Code, § 3000.08, subd. (c).) The parole agent may petition to revoke parole. (*Id*., subd. (f).) "Upon a finding that the person has violated the conditions of parole, the court shall have authority to . . . . [¶] . . . [¶] . . . [r]evoke parole and order the person to confinement in a county jail." (*Id*., subd. (d).) "Parole may only be revoked for cause." (*In re Miller* (2006) 145 Cal.App.4th 1228, 1234; see Pen. Code, § 3063.) The alleged violation must be proven by a preponderance of the evidence. (*In re Miller*, at pp. 1234-1235.)

One of the conditions of defendant's parole was that he would not engage in conduct prohibited by law. The trial court found by a preponderance of the evidence that defendant violated that condition when he fled the scene of an injury accident within the meaning of section 20001.

Section 20001, subdivision (a) provides, "The driver of a vehicle involved in an accident resulting in injury to a person . . . shall immediately stop the vehicle at the scene of the accident and shall fulfill the requirements of Sections 20003 and 20004." Pertinent to this appeal, section 20003, subdivision (a) requires, among other things, that the driver

of the vehicle stop and render reasonable assistance to any person injured in the accident, "including transporting, or making arrangements for transporting, any injured person to a physician, surgeon, or hospital for medical or surgical treatment if it is apparent that treatment is necessary or if that transportation is requested by any injured person."

Defendant asserts the trial court erred in finding he violated section 20001 because there was no substantial evidence to support the finding he failed to render aid to Elicia B. after the incident or fled the scene. " ' "In a substantial evidence challenge to a judgment, the appellate court will 'consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings].' " ' " (*Gomez v. Smith* (2020) 54 Cal.App.5th 1016, 1026.) Substantial evidence is evidence that is reasonable, credible, and of solid value from which a reasonable trier of fact could find the prosecution's burden was met. (See *People v. Elliott* (2012) 53 Cal.4th 535, 585.) In reviewing a judgment, " ' " 'any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision.' " ' " (*Gomez*, at p. 1026.) The reviewing court " ' "may not reweigh the evidence and [is] bound by the trial court's credibility determinations." ' " (*Ibid*.)

Initially, defendant argues the trial court improperly disregarded large portions of Elicia B.'s testimony. The People argue the trial court properly found Elicia B.'s testimony was not credible because her testimony contained multiple inconsistent statements in comparison to the statements she made to Agent Brady. The People highlight the multiple inconsistencies as follows: (1) Elicia B. testified defendant bumped her leg, but told Agent Brady defendant ran over her leg; (2) she testified she did not need to go to the hospital, but told Agent Brady she transported herself to the hospital, and informed defendant via text message that she needed to go to the emergency room; and (3) she testified defendant grabbed his belongings and left the scene before she

7

did, but told Agent Brady that defendant drove away from the scene and she had to drive herself to the hospital.

"Venerable precedent holds that, in a bench trial, the trial court is the 'sole judge' of witness credibility. [Citation.] . . . The fact finder's determination of the veracity of a witness is final. [Citation.] Credibility determinations thus are subject to extremely deferential review." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582; see *La Jolla Casa DeManana v. Hopkins* (1950) 98 Cal.App.2d 339, 345-346 ["a trial judge has an inherent right to disregard the testimony of any witness . . . . The trial judge is the arbiter of the credibility of the witnesses"].) A reviewing court will not reweigh evidence or reevaluate a witness's credibility. (*People v. Renteria* (2022) 13 Cal.5th 951, 970.)

Here, the trial court reasoned that, due to the competing versions of the facts, its findings depended on which version of the facts the trial court found credible. The trial court analyzed each statement, as addressed by the People, and confirmed inconsistencies between Elicia B.'s testimony and her statements to Agent Brady. The trial court also acknowledged Elicia B.'s relationship with defendant and how "of course, she [did not] want to do anything that would possibly send him back to prison." The trial court found Elicia B.'s testimony lacked credibility whereas her statements to Agent Brady did not. The trial court's credibility analysis was reasoned and thorough. We find no reason or basis to conclude the trial court abused its discretion.

Defendant next argues he did not fail to render reasonable aid to Elicia B. within the meaning of the Vehicle Code because she did not need any immediate assistance. Defendant relies on Elicia B.'s testimony that she never went to the hospital, which, in defendant's opinion, "clearly indicates that transportation to the hospital from the scene was not necessary." Defendant, however, ignores that Elicia B. told Agent Brady she transported herself to the hospital and that she sent defendant a text message the day after the incident noting the extent of her injuries and stating she needed to go to the emergency room. Elicia B.'s injuries were caused by the incident and the extent of her

8

injuries indicated she needed medical attention. It is reasonable to infer that, if she needed medical attention the day after the incident, she needed medical attention when the injuries occurred. If there is substantial evidence in the record to support the judgment, it does not matter that it is contradicted by other evidence. (*Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429.) "Our job is only to see if substantial evidence exists to support the verdict in favor of the prevailing party, not to determine whether substantial evidence might support the losing party's version of events." (*Schmidt v. Superior Court*, *supra*, 44 Cal.App.5th at p. 582.) Moreover, the trial court did not find Elicia B.'s testimony credible.

Defendant further argues that, even if assistance was necessary at the scene, he "still cannot be found guilty of failing to render assistance because the necessity of assistance [was not] apparent." It appears defendant is arguing that, because Elicia B. did not exhibit physical injuries immediately or ask for assistance, he could not have known she required any assistance. Defendant asserts none of the evidence supports a finding she "was unable to contact help if necessary or unable to walk. No one testified that [Elicia B.] was unconscious or incapacitated in any way." Additionally, defendant asserts there was no evidence introduced showing he prevented their friend from offering aid to Elicia B. We find no merit in this argument.

Knowledge of the injury need not be actual knowledge. As our Supreme Court explained, "[A] driver who leaves the scene of the accident seldom possesses actual knowledge of injury; by leaving the scene he forecloses any opportunity to acquire such actual knowledge. Hence a requirement of actual knowledge of injury would realistically render the statute useless." (*People v. Holford* (1965) 63 Cal.2d 74, 80.) Criminal liability under section 20001 "attaches to a driver who knowingly leaves the scene of an accident if he actually knew of the injury or if *he knew that the accident was of such a nature that one would reasonably anticipate that it resulted in injury to a person*." (*Holford*, at p. 80, italics added; see *People v. Carter* (1966) 243 Cal.App.2d 239, 241

9

[liability attaches "where the fact of personal injury is visible and obvious," or "where the seriousness of the collision would lead a reasonable person to assume there must have been resulting injuries"].)

Elicia B. told Agent Brady defendant accelerated the car toward her when he ran over her leg. The trial court, thus, found defendant reasonably should have known from the nature of the accident that Elicia B. was hit by the moving car and an injury followed. A car, weighing several thousand pounds, certainly has a great potential to cause injury when it is propelled at a person, even at a low rate of speed. Defendant further acknowledged the injury in his text message to Elicia B. when he wrote, "I never want you hurt, Eli. I explained I panicked, accelerated when I thought I was in park." There is thus substantial evidence defendant knew he hit Elicia B. with the car, and yet he failed to render any aid.

Finally, defendant argues no evidence clearly showed he left the scene before Elicia B. left the scene. Defendant asserts Elicia B.'s statement to Agent Brady that defendant left the scene does not specify when he left the scene and thus the People did not meet their burden of showing he fled the scene. Defendant also argues Elicia B. testified she drove the vehicle from the scene after offering defendant a ride home and thus the evidence shows defendant did not leave the scene first and any duty to aid Elicia B. lapsed.

The prosecution did not need to show that defendant left the scene before Elicia B. left the scene. Section 20001, subdivision (a) required defendant to stop the vehicle and fulfill the requirements of section 20003, which in turn, required him to do various things, including rendering reasonable assistance. (§ 20003, subd. (a).) As already established, there was substantial evidence that defendant failed to fulfill the obligation to render reasonable assistance. We thus affirm the trial court's order revoking his parole.

10

DISPOSITION

The order revoking defendant's parole is affirmed.

/s/
Robie, Acting P. J.

We concur:

/s/
Krause, J.

/s/
Boulware Eurie, J.