Filed 3/11/25  Marriage of G.V. and V.V. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of G.V. and V.V. | D085388 |
| G.V., | |
| Appellant, | (Super. Ct. No. FLRI2300691) |
| v. | |
| V.V., | |
| Respondent. | |

APPEAL from an order of the Superior Court of Riverside County, Matthew Forsse, Commissioner.  Affirmed.

Johnson & Shinton and Thomas E. Shinton, for Appellant.

Bartell, Hensel & Gressley and Donald J. Hensel, for Respondent.

G.V. (Wife) appeals from an order denying her request for a domestic violence restraining order (DVRO) against her ex-husband, respondent V.V. (Husband), under the Domestic Violence Prevention Act (DVPA, Fam. Code,[1] § 6200 et seq.).  She contends substantial evidence supported the issuance of a DVRO and its denial was an abuse of discretion.  We affirm the order

---

[1]     Undesignated statutory references are to the Family Code.

because Wife failed to establish the trial court abused its discretion in denying her request for a DVRO.

## FACTUAL AND PROCEDURAL OVERVIEW

Wife and Husband married in 2014 and separated in 2020. Wife, originally from Canada, came to the United States on a student visa and later obtained a work visa. Husband later became Wife's immigration sponsor and she became a United States citizen in 2021. Wife claimed that starting in 2015, Husband used her immigration status as leverage against her. Law enforcement came to their residence three times. The first time was in 2015 when the neighbors called police due to Husband's yelling. Husband told the officers that he yells because he is deaf.[2] Wife told the officers everything was fine.

The second incident occurred in 2018 when Wife alleged that Husband chased her around the house after she threatened to call the police because he had choked her. An officer arrived and told Wife to take a photograph of her neck which displayed some redness. Wife did not ask for Husband to be arrested and he was not arrested. The third call to police occurred on January 31, 2023, with Wife alleging that Husband pushed her into a bookshelf where she hit her face and collar bone. Police arrived but Wife did not press charges.

On February 1, 2023, Husband filed for dissolution and sought spousal support. Husband's income and expense declaration reported average monthly income of about $2,024. Wife reported gross monthly income of about $13,009. Wife first alleged being a victim of domestic violence after a

---

[2] Husband testified at trial with the assistance of an American Sign Language interpreter and Wife believed Husband was born deaf.

July 3, 2023, court hearing regarding Husband's request for temporary spousal support.

On July 20, 2023, Wife filed a request for a DVRO. Her written request alleged abuse occurred in 2018 and 2020. She claimed the latest incident of abuse happened on January 31, 2023. She attached a declaration explaining the abuse. On January 31, 2023, Wife claimed Husband took everything from their garage and shoved her into a bookshelf. She lost her balance, fell forward, hitting her face and collarbone on the bookshelf. In 2022, Husband broke his arm after punching holes in the walls of their residence. During this incident he allegedly yelled at her to "Go back to Canada!" and "You should just kill yourself!" In 2020, Husband assaulted her during an argument by pinning her neck on a bed and choking her. She drove to a police station but did not press charges fearing that Husband would kill her. Wife claimed another incident occurred in 2018 when Husband yelled at her regarding their finances which prompted their neighbors to call law enforcement. Although the DVRO request form allows the person seeking protection to also obtain protection for animals, Wife left this portion of the form blank.

At the hearing on Wife's request, the court heard testimony from the parties and one of their neighbors, Mandy F. The parties addressed the incidents alleged in the petition. Additionally, Wife claimed Husband routinely abused their Chihuahua by confining it in a stepstool compartment and hitting or throwing the dog. She alleged that in 2022, Husband broke his hand by punching a door frame during an argument. Wife stated she was frightened when Husband sent a text message saying she would "pay by feeling his pain." Wife also asserted that Husband sexually abused her approximately six times by coercing her into unwanted sex. Between

3

February and April 2023, Wife claimed Husband flew a drone around their home on weekends but she never confronted him. Mandy also observed a drone flying near the home three or four times after Husband had moved out.

Husband disagreed with Wife's recollection of events. He denied shoving Wife into the bookshelf, claiming she tripped and fell into it. He attributed his broken hand in 2022 to a slip and fall while working on his car. He denied ever strangling Wife or placing his hand around her throat and claimed the red mark on her neck resulted from "horseplay." Husband stated his drone had crashed, was inoperable and he never used it after January 2023 to surveil the residence. He denied ever having sex against Wife's will and was never asked about abusing the family dog.

After hearing argument, the court ruled from the bench. The court found the parties to be evasive at times and noted Wife "either had difficulty or refused to answer what [it] would view as relatively straightforward questions." After considering all the evidence, the court found Wife did not meet her burden of proof as to the alleged 2020 choking incident, the January 31, 2023 incident, and the 2022 hole punch incident. As to alleged drone incident, the court found Husband's account denying involvement to be more credible. Regarding Husband's text messages, the court found no credible evidence they amounted to a threat that would disturb a reasonable person's peace or destroy their mental calmness. It also found Wife's allegations of sexual abuse to be incredible. The court concluded Wife failed to meet the burden of proof needed for a DVRO.

## DISCUSSION

A. Legal Principles

The purposes of the DVPA are "to prevent acts of domestic violence, abuse, and sexual abuse and to provide for a separation of the persons

involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence." (§ 6220.) The DVPA defines "abuse" broadly to include any behavior that could be enjoined under section 6320, such as harassing, telephoning, contacting by mail, or otherwise disturbing the peace of the other party. (§§ 6203, subd. (a)(4) & 6320; *In re Marriage of Brubaker & Strum* (2021) 73 Cal.App.5th 525, 536 [abuse is broader than threats or acts of physical abuse].) The DVPA requires a showing of past abuse by a preponderance of the evidence. (*In re Marriage of Davila & Mejia* (2018) 29 Cal.App.5th 220, 226.)

The court's issuance of a restraining order under the DVPA is discretionary (§ 6300, subd. (a)) and we review an order granting or denying a DVRO for abuse of discretion (*In re Marriage of D.S. & A.S.* (2023) 87 Cal.App.5th 926, 933). We apply the substantial evidence rule to evaluate the court's factual determinations. (*M.S. v. A.S.* (2022) 76 Cal.App.5th 1139, 1143–1144.) The key question is whether substantial evidence supports the court's findings, rather than whether a different conclusion could have been reached. (*Id.* at p. 1144.) We consider all evidence that supports the trial court's findings to be true and resolve any conflicts in favor of the court's order. (*Ibid.*)

Where, as here, the trial court determines the party with the burden of proof failed to carry that burden, we may reverse the decision only if we determine " ' "the evidence compels a finding in favor of the appellant as a matter of law." ' " (*Jan F. v. Natalie F.* (2023) 96 Cal.App.5th 583, 593.) Under this standard, a finding is compelled only if the appellant's evidence was " ' "uncontradicted and unimpeached" ' " and " ' "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Dreyer's Grand Ice Cream, Inc. v.*

5

*County of Kern* (2013) 218 Cal.App.4th 828, 838.) "Where the trier of fact has drawn reasonable inferences from the evidence, we have no power to draw different inferences, even though different inferences may also be reasonable. [Citation.] The trier of fact is not required to believe even uncontradicted testimony." (*LandWatch San Luis Obispo County v. Cambria Community Services District* (2018) 25 Cal.App.5th 638, 643.)

B. Analysis

As a preliminary matter, Wife does not address the trial court's findings that she did not meet her burden of proof as to the alleged 2020 choking incident, the January 31, 2023 incident, and the 2022 hole punch incident. Husband disputed her account of all three events. He stated that Wife tripped over him while he was kneeling to pack his belongings, causing her to fall into a bookshelf. He claimed he broke his hand in mid-2022 after slipping while working on his car. Regarding the red mark on Wife's neck in the photograph, he attributed it to "horseplay" rather than an attempt to strangle her. Husband denied ever strangling Wife or placing his hand around her throat. On this record, Wife cannot show that the evidence is uncontradicted and unimpeached or that it compels a finding in her favor as a matter of law.

Instead, Wife argues the trial court erred in denying a DVRO, as Husband did not refute abusing the couple's dog—an act of domestic violence the court failed to address in its oral ruling. Subdivision (b) of section 6320 allows a court to order a respondent to stay away from an animal and forbid a respondent from, among other things, striking, threatening or harming an animal. Thus, Wife's claim that Husband assaulted the family Chihuahua on a weekly basis by locking the dog in a small compartment, throwing or

6

hitting the dog, amounted to "abuse" within the meaning of section 6203 if believed by the trial court.

Husband did not address Wife's allegation of animal abuse at the hearing because he was not asked about it. Nonetheless, that Husband produced no contradictory evidence on an issue where Wife bore the burden of proof does not mean that Wife carried her burden. As the exclusive judge of the credibility and weight to be given to the testimony of a witness, the trier of fact may reject the testimony of a witness even if, as was the case here, it is uncontradicted. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 890.) We may not reweigh the witness's credibility, and we must "accept as true all evidence and all reasonable inferences from the evidence tending to establish the correctness of the trial court's findings and decision, resolving every conflict in favor of the judgment." (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 630–631.)

Although the trial court did not expressly state it disbelieved Wife's allegations of animal abuse, it impliedly rejected the veracity of Wife's claim that Husband abused a small dog on a "weekly" basis by trapping, throwing or hitting it. As an appellate court, we cannot second guess the trial court's implied or express findings on credibility. Wife concedes this cornerstone of appellate review but points out some instances where she considered the court's credibility finding to be astounding.

A trial judge, however, has the inherent authority to disregard a witness's testimony or any prima facie evidence based on it if the judge finds the testimony untruthful or inherently improbable. (*La Jolla Casa De Manana v. Hopkins* (1950) 98 Cal.App.2d 339, 345–346.) This may be due to inaccuracy, uncertainty, the passage of time, or the witness's personal interest or bias. (*Id.* at p. 346.) Even without conflicting testimony, these

factors can affect the weight given to a witness's statements. (*Ibid.*) The judge serves as the ultimate evaluator of credibility, and a witness's testimony may be contradicted by the facts they present as much as by opposing testimony. (*Ibid.*) Significant omissions or a manner of testifying that raises doubts about sincerity can also undermine credibility. (*Ibid.*)

Here, the court made credibility findings throughout its oral ruling and noted Wife had difficulty answering what it considered to be straightforward questions. For example, Wife testified she and Husband filed joint tax returns but claimed to be unaware of Husband's financial status or whether he received any social security payments due to his deafness claiming she never looked at his documents. Additionally, although Wife's parents are deaf and Husband is deaf, she initially claimed deaf people do not tend to yell. When asked whether it ever happens, she responded, "Perhaps, but that is not a standard." The court found both responses "concerning" and found her lack of knowledge regarding Husband's benefits to be incredible.

Additionally, Wife did not raise the serious allegations of animal and sexual abuse in her written DVRO request. Instead, Wife voluntarily raised both claims for the first time at the hearing. Considering all the circumstances, the court could have reasonably determined that Wife's failure to present these serious allegations earlier weakened her credibility in the DVRO hearing. (See *Jennifer K. v. Shane K.* (2020) 47 Cal.App.5th 558, 585 ["While absence of a prompt complaint is not a reliable indicator that an alleged sexual assault did not occur, the circumstances surrounding a delayed complaint may be relevant in evaluating the likelihood that the assault occurred."]; see generally, Evid. Code, § 780 ["[e]xcept as otherwise provided by statute, the court . . . may consider in determining the credibility of a

8

witness any matter that has any tendency in reason to prove or disprove the truthfulness of his [or her] testimony at the hearing"].)

Finally, Wife argues the record calls into question the trial court's understanding of what constitutes abuse under the DVPA, claiming the court unreasonably concluded Husband's text message that Wife would pay by feeling his pain would not disturb the peace of any ordinary person. We do not agree with Wife's reading of the record.

Husband's statement regarding Wife "feeling [his] pain" came in the middle of a text message exchange between the parties where both parties expressed grievances about their marriage. Husband testified he made this statement "[b]ecause I hate to be alone and she hates to be alone as well. So I decided that one day down the road, I was going to kill myself, but I'm past that phase." Husband stated he never at any point told Wife he intended to kill himself. When questioned whether his statement was intended to communicate to Wife that he intended to kill himself, Husband replied, "If I can recall, and you can see in the next message, I said that it hurts. And you go back, you can see the previous conversation, then you can see the context, and I feel like you are just picking at messages instead of showing the entire conversation." Not every act that "upsets the petitioning party" may be deemed destructive of the party's mental or emotional calm to warrant issuance of a DVRO. (*Curcio v. Pels* (2020) 47 Cal.App.5th 1, 13.) Reading the entire exchange between the parties, the trial court reasonably concluded Husband's statement did not constitute a threat that would disturb the peace of an ordinary person.

Looking at the totality of all these circumstances, the trial court concluded the acts and events pled by and testified to by Wife did not reach the level of "abuse" within the meaning of the DVPA. We affirm the order

9

because Wife has not shown the denial of her application for a DVRO constitute an abuse of discretion.

DISPOSITION

The court order denying Wife's request for a domestic violence restraining order is affirmed.  Respondent is entitled to his costs on appeal.


BUCHANAN, J.

WE CONCUR:


McCONNELL, P. J.


KELETY, J.